Com. of Pa. *v.* Arbach, Appellant.

Argued March 13, 1934.

Before TREXLER, P. J., KELLER, CUNNING-
HAM, BALDRIGE, STADTFELD, PARKER and JAMES, JJ.

*Walter Thomas,* and with him *Thomas J. Minnick,
Jr.,* for appellant.

138

*Vincent A. Carroll,* and with him *Norris S. Barratt, Jr.,* Assistant District Attorney and *Charles F. Kelley,* District Attorney, for appellee.

OPINION BY KELLER, J., April 23, 1934:

Elwood Arbach, who was convicted of burglary and sentenced to the Philadelphia County Prison for a term of not less than two and one-half years nor more than ten years, has appealed from the order of the court below refusing to parole him, under the provisions of the Parole Act of June 19, 1911, P. L. 1059, as amended by Act of May 11, 1923, P. L. 204, before the expiration of his minimum sentence. Whether or not a court shall exercise the power granted by that act and parole a prisoner is a matter of discretion with it, not subject to review by this court. While the learned judge of the court below ruled that the provisions of the Probation Act of June 19, 1911, P. L. 1055 which authorizes the placing of convicts on probation, *before sentence,* must be read into the Parole Act aforesaid, to the extent that paroles could not be granted to persons confined in county jails or workhouses, who had been convicted of crimes which were excepted from the Probation Act aforesaid, viz., murder, administering poison, kidnapping, incest, sodomy, buggery, rape, assault and battery with intent to ravish, arson, robbery or burglary, he did not declare that if the law were otherwise he would parole appellant; the furthest he went was to say that he *would be inclined* to grant the parole, if he had the power.

The sentencing of convicts both as respects the term of imprisonment and where they shall be confined is fixed by statute. An examination of the penal clauses affixed to offenses by the Penal Code of 1860 (March 31, 1860, P. L. 382) will show that certain crimes or misdemeanors are punishable by 'imprisonment,'

without more, or by 'simple imprisonment.' These mean confinement in a county jail or workhouse: Com. ex rel. Stanton v. Francies, 250 Pa. 350, 352, 95 A. 798; Com. v. Fetterman, 26 Pa. Superior Ct. 569. Certain other crimes are punishable by imprisonment at labor, by separate or solitary confinement, or by separate or solitary confinement at labor. These mean confinement in a penitentiary, except as hereinafter stated. Ibid. The Criminal Procedure Act of 1860 (March 31, 1860, P. L. 427) divides sentences for penitentiary offenses into two classes, (1) those for a period of a year or longer, (2) those for less than a year. As to the former, it provides in section 74 (as amended by Act of February 28, 1905, P. L. 25) that "Whenever any person shall be sentenced to imprisonment at labor by separate or solitary confinement, for any period not less than one year, the imprisonment and labor shall be had and performed in the State Penitentiary for the proper district: Provided, That nothing in this section contained shall prevent such person from being sentenced to imprisonment and labor, by separate or solitary confinement, in the county prisons now or hereafter authorized by law to receive convicts of a like description." This *proviso*, as well as the construction placed upon it by this court in Com. v. Fetterman, 26 Pa. Superior Ct. 569, 571, has been misunderstood by some judges. It does not give a court the power to elect to sentence a person, who has been convicted of a crime punishable by imprisonment at labor by separate or solitary confinement, to either the penitentiary or the county jail or prison, except in two instances: (1) Where the Act defining the offense and fixing the penalty, expressly gives such option (See Criminal Code, inter alia, sections 4, 5, 20, 23, 41, 78, 98, 127, 128), or (2) where the county prison to which the convict is sentenced comes within the language of the proviso, and was in 1860, at the

passage of the Criminal Procedure Act, or afterwards, "authorized by law to receive convicts of a like description," that is, convicts sentenced to imprisonment at labor, by separate or solitary confinement. Thus by Act of February 8, 1842, P. L. 14, sec. 11, it was provided, "That every person who shall hereafter be convicted in any court of criminal jurisdiction, in the city or county of Philadelphia of any crime, the punishment of which would now be imprisonment in the State Penitentiary, may be sentenced by the proper court to suffer imprisonment by separate or solitary confinement at labor, either in the State penitentiary or in the Philadelphia county prison, at the discretion of the courts, excepting in case of murder in the second degree, and manslaughter." The Philadelphia County prison comes within the proviso of section 74 of the Act of 1860, supra, as being *"now,* [that is, in 1860], authorized by law to receive convicts of a like description." An example of a county prison *"hereafter* authorized by law to receive convicts of a like description," was the Lancaster County Prison, which by Act of April 3, 1869, P. L. 692 (repealed by Act of June 20, 1883, P. L. 128) was directed to be the place of confinement and punishment of any person convicted in any court of criminal jurisdiction for the County of Lancaster, "of any crime excepting murder in the second degree, manslaughter or child rape." By examining Price's Index to Local Laws in Pennsylvania and following it down in the legislation since its publication, (1892), a judge can determine whether the county prison in his county was specially authorized in 1860, or afterwards (up to the Constitution of 1873 —Art. III, sec. 7), and *still remains,* authorized by law to receive prisoners convicted of penitentiary offenses, where the Penal Code does not give the option of imposing simple imprisonment or imprisonment at labor, etc., and the sentence is for one year or longer. If the case is not within these exceptions, and the county

prison is not 'authorized by law' to receive such convicts, the court has no power to sentence one convicted of a crime requiring imprisonment at labor by separate or solitary confinement, for a year or longer, to a county jail or workhouse, but must sentence him to the penitentiary for that district.

Section 75 of the Criminal Procedure Act of 1860,—(the amendment of June 26, 1895, P. L. 374, is not material here)—, governs sentences to imprisonment at labor by separate or solitary confinement, for a period of less time than one year, and provides that, "No person shall be sentenced to imprisonment at labor by separate or solitary confinement for a period of time less than one year, except in the counties where, in the opinion of the court pronouncing the sentence, suitable prisons have been erected for such confinement and labor; ...... Provided, That in the counties where suitable prisons for separate or solitary confinement at labor do not exist, and the sentence shall be for less than one year, simple imprisonment shall be substituted in all cases for the separate and solitary confinement at labor required by the act to consolidate, revise and amend the penal laws of this Commonwealth." It also provides that all persons sentenced to simple imprisonment for any period of time shall be confined in the county jail where the conviction shall take place.

This section gives the court in any county, where in its opinion a suitable prison has been erected for furnishing convicts with separate or solitary confinement and labor, *in imposing sentences for less than a year* upon persons convicted of crimes which require, as a penalty, imprisonment in a penitentiary, power to sentence them to separate or solitary confinement at labor in such suitable county prison; and if there is no such suitable county prison, to sentence them to simple imprisonment in the county jail. It has no

application at all to sentences for a year or longer, which, whether there be a suitable county prison or not, in all crimes *requiring* a penalty of imprisonment at labor, by separate or solitary confinement, must be to the penitentiary of the proper district, unless the county prison is by law authorized to receive such convicts. Section 75, of itself, does not furnish such authority, except as to sentences for less than a year.

All of the sentences above referred to related to definite or fixed terms, which, by Act of May 11, 1901, P. L. 166, became subject to commutation in case of good behavior.

In 1909, however, (Act of May 10, 1909, P. L. 495, sec. 6) the General Assembly made provision for indeterminate sentences to the penitentiary, with minimum and maximum limits, the minimum not to exceed one-fourth of the maximum unless otherwise fixed in the act defining the crime. This was superseded by the Act of June 19, 1911, P. L. 1055, which we referred to at the outset as the Probation Act, and which, in section 6, provided that sentences to imprisonment in a penitentiary should, in all cases, be for an indeterminate term, stating in such sentence the minimum and maximum limits thereof, but which removed the provision that the minimum sentence should not exceed one-fourth of the maximum.

It will be noted that neither of these acts (May 10, 1909, P. L. 495, or June 19, 1911, P. L. 1055) requiring indeterminate sentences, applied to sentences to county jails or workhouses but covered only sentences to penitentiaries, and the later act (June 19, 1911, P. L. 1055) put no limit on the minimum sentence. Hence, some judges, who were not in sympathy with the indeterminate sentence act, in cases where a choice was given by the act defining the crime and fixing the penalty, between sentencing the convict to the penitentiary or to the county jail or

workhouse, chose the latter, because the indeterminate sentence statute did not apply in such case; and, in crimes where no option was given them, fixed the minimum sentence so close to the maximum as, in effect, to nullify the act. To remedy these evasions of the Act the Amendment of June 29, 1923, P. L. 975, (known as the Ludlow Act) was passed, which changed the existing law in two respects: (1) It applied the indeterminate sentence provision to every sentence which *might be* punished by imprisonment in a state penitentiary, even though under the penal act the court might, alternatively, have power to sentence the convict to the county jail or workhouse—(See, inter alia, Sections 4, 5, 20, 23, 41, 78, 98, 127, 128 of the Penal Code); and (2) it enacted that the minimum sentence should not exceed one-half of the maximum sentence. It also provided: "That nothing herein contained shall be construed to derogate from the power of the judges of the courts of quarter sessions and of the courts of oyer and terminer, or other court of record having jurisdiction, of the several judicial districts of the Commonwealth, after due injury, [inquiry?] to release on parole any convict confined in the county jail, house of correction, or workhouse of their respective districts, as provided in section one of an act, approved the nineteenth day of June, one thousand nine hundred and eleven (Pamphlet Laws, one thousand fifty-nine), entitled 'An act extending the powers of judges of courts of quarter sessions and of oyer and terminer, in relation to releasing prisoners in jails and workhouses on parole,' its amendments and supplements: ...... And provided further, That, before any parole shall be granted pursuant to the terms hereof, notice of an intention so to do shall be given, at least ten days prior thereto, by the board of prison inspectors to the judge of the county who imposed the sentence, if he be still in office, but other-

wise to the judge or judges of the court of oyer and terminer or the court of quarter sessions then in session, or if there be no current term, then to the next ensuing term thereof, and having jurisdiction of cases of the like character. Similar notice shall also be given to the district attorney then in office in said county." The act was declared constitutional in Com. v. Sweeney, 281 Pa. 550, 127 A. 226; and the last two quoted provisos were construed by this court in Com. v. Renya, 91 Pa. Superior Ct. 90.

Some judges have misunderstood the effect of the Act of 1923. It does not give the court power, in *all* cases punishable by imprisonment in a state penitentiary to choose or elect whether to sentence the convict to the penitentiary or to the county jail or workhouse, but only applies (1) to cases where the act defining the crime and fixing the penalty specifically gives the court authority to sentence the convict either to the penitentiary or to the county jail or workhouse —that is, gives it the choice to impose imprisonment at labor by separate or solitary confinement, or simple imprisonment; and (2) to cases, where although the act defining the crime and fixing the penalty imposes a sentence of imprisonment at labor by separate or solitary confinement,—that is, in a state penitentiary, —there is in force a special statute authorizing the county prison of that county to receive convicts otherwise punishable by a penitentiary sentence. In both of these instances, and only in these two cases,—(provided the sentence is for a year or longer),—if the court elects to sentence the convict to the county prison or workhouse, instead of to the penitentiary, it must impose an indeterminate sentence, with minimum and maximum periods of confinement, in like manner as if the sentence had been to the penitentiary.

Considering then the first section of the Probation Act of 1911 aforesaid, we find that of the crimes which

are excepted from the probation provisions of the act, to wit, murder (Penal Code, sec. 76), administering poison (Secs. 81, 82; April 14, 1893, P. L. 17), kidnapping (Sec. 94; February 25, 1875, P. L. 4), incest (Sec. 39), sodomy (July 16, 1917, P. L. 1000), buggery (July 16, 1917, P. L. 1000), rape (Sec. 91, as amended by Act of May 19, 1887, P. L. 128), assault and battery with intent to ravish (Sec. 93), arson (Sec. 137; replaced by April 25, 1929, P. L. 767), robbery (Sec. 102), and burglary (Sec. 135), all of them but rape, are punishable by imprisonment at labor, by separate or solitary confinement—that is by imprisonment in the penitentiary,—and no option is given the court in the Penal Code or in the acts defining the crime and fixing the penalty to impose a sentence of simple imprisonment, or in the county jail. By the penal code of 1860, (Sec. 91) rape was likewise to be punished by imprisonment in the penitentiary, but when the Act of May 19, 1887, P. L. 128 was passed, raising the age of consent, as respects 'statutory rape,' from ten to sixteen years, the option of imposing simple imprisonment, or imprisonment in the penitentiary was given the court, no doubt to cover cases where the girl, though under sixteen, was well grown, and there was no force or violence used, and it was felt unjust to impose as severe a sentence as in the case of forcible rape. In none of these cases which are excepted from the Probation Act of 1911, but rape, does a court have the power or authority to sentence a convict—for one year or longer—to a county jail or workhouse, except in counties where by special Act of Assembly county prisons are authorized to receive convicts who otherwise would have to be sentenced to a penitentiary.

When therefore the General Assembly enacted the Probation Act of 1911 (P. L. 1055) and the Parole Act of 1911 (P. L. 1059) no courts, except those in counties where special authority had been given, and

still resided, to sentence persons convicted of strictly penitentiary offenses to county prisons, had the power, legally, to sentence to a county jail or workhouse any person convicted of any of the crimes excepted from the probation provisions of the Act of 1911 (P. L. 1055), other than rape. As to courts generally, that is, all others than those having such special authority, there was no occasion to except from the provisions of the Parole Act of 1911 (P. L. 1059) the crimes excepted from the probationary provisions of the Probation Act of 1911 (P. L. 1055), for persons convicted of those offenses—other than rape—could not legally be sentenced, for a year or longer, to a county jail or workhouse. The law then in force automatically excepted them from the provisions of the Parole Act of 1911 (P. L. 1059) except in counties where the special authority above mentioned had been given.

We are not convinced that in passing the Probation Act of 1911 (P. L. 1055), relating to the probation of convicts before sentence, and the Parole Act of 1911 (P. L. 1059) relating to the parole of prisoners in jails and workhouses after sentence, the General Assembly had these special counties in mind, or that it was its intention to read the exceptions from probation before sentence into the Parole Act which is concerned solely with paroles, after sentence to county jails, workhouses, and houses of correction (Amendment of May 5, 1921, P. L. 379). The broad language of the act as amended, "That the courts of quarter sessions and oyer and terminer ...... are authorized, after due hearing, to release on parole *any* convict confined in the county jail, house of correction or workhouse of their respective district" etc.; and the equally broad language of the Act of June 29, 1923, P. L. 975, amending the Probation Act of 1911 (P. L. 1055) which was passed upon by us in Com. v. Renya, supra, "Provided, That nothing herein con-

tained shall be construed to derogate from the power of the judges of the courts of quarter sessions and of the courts of oyer and terminer ...... to release on parole *any* convict confined in the county jail, house of correction or workhouse in their respective districts, as provided in section one of an act approved the nineteenth day of June, 1911, Pamphlet Laws 1059 ...... its amendments and supplements,'' lead us to the opposite conclusion.

A court of a county having this special and unusual authority to sentence persons convicted of the grosser crimes to the county prison instead of to the penitentiary, may well voluntarily limit the exercise of the parole privilege granted by the Act of 1911 (P. L. 1059) and its amendments, so as to bring it within the spirit of the Probation Act of 1911 (P. L. 1055), except in unusual circumstances calling for special leniency, but we cannot hold that the provisions of Section 1 of the Probation Act of 1911 (P. L. 1055) are impliedly incorporated into the Parole Act of 1911 (P. L. 1059). We cannot read into that act what is not in it, and we are obliged to construe the act without any restrictions other than are contained within it: Com. v. Renya, 91 Pa. Superior Ct. 90.

We have not discussed the statutes authorizing the transfer of prisoners, after sentence, from penitentiaries to jails, or from jails to penitentiaries, because they are not here involved.

The appeal is dismissed.