STATE, Respondent, vs. CLEMENTI and others, Appellants.

*January 13—March 9, 1937.*

146

For the appellants there was a brief by *James D. Sammarco* of Milwaukee, attorney, and *Hill, Beckwith & Harrington* of Madison of counsel, and oral argument by *Mr. John T. Harrington* and *Mr. Sammarco*.

For the respondent there was a brief by the *Attorney General, J. E. Messerschmidt*, assistant attorney general, and *Scott Lowry*, district attorney of Waukesha county, and oral argument by *Mr. Messerschmidt* and *Mr. Lowry*.

ROSENBERRY, C. J.   One Edward S. Burroughs is the owner and operator of a tavern in the village of Pewaukee, in Waukesha county. On the morning of November 8, 1935, he had left his place in charge of Oscar Kolander.   In the barroom was a machine known as a Pace's Races, which was known and will hereafter be referred to as "State's Exhibit 1."   This machine was the property of the Waukesha Novelty Company, a partnership composed of Otto Schroeder and Anton Voight, and was in the place upon some sort of a commission basis.   There were likewise two slot machines in the barroom owned by the same persons and left in the pos-

session of Burroughs. On the early morning of November 8, 1935, Enea came into the barroom and sat on a stool. Shortly thereafter Clementi, Maniaci, Picciurro, and Da More came in. The defendants ordered five beers, when one of them ordered Kolander to "Stay where you are." State's Exhibit 1 was then taken out of the tavern by Enea and Maniaci. They then demanded the key to the slot-machine cabinet of Kolander. He informed them he did not have it; that it was in the cash register, whereupon he gave the key to one of the men. The machine was then broken by the use of a hammer procured from a car outside and its contents removed. During this proceeding Clementi, according to the testimony of Kolander, stood near the end of the bar with his right hand in his pocket, his pocket bulged. State's Exhibit 1 was placed upon a truck belonging to Clementi. The truck was to be driven to Highway No. 30, Da More having the intention, it was declared, of throwing the machine into the first river he came to. Da More took the wrong road, the truck broke down, and Da More caught a ride back to Waukesha. While standing on the street at Waukesha, he was picked up by the other defendants, the whole party then continuing on to Milwaukee. The police had picked up a broadcast relating to the alleged robbery, and while the defendants were proceeding on the Blue Mound road, a few miles out of Milwaukee, they were apprehended. Warrants were subsequently issued, and they were held for trial as already stated.

The defendants first claim error because of prejudicial argument made by the district attorney in his closing argument to the jury. There was no criticism of the district attorney's opening argument. When the argument was made on behalf of the defendants, counsel sought to try the sheriff of Waukesha county for permitting the presence of gambling machines, and charged the owners of the machine with being gamblers and racketeers, referred to them as scum, and other

statements of similar tenor. Apparently the district attorney felt called upon to answer this argument in kind, and in the course of his argument made the following statement:

"I said they are gangsters, gunmen, hoodlums, mobsters, ruffians and they are. They are conspirators, mobsters, gunmen and racketeers. Look at them now, and see what they look like.

"They all admitted that they were convicted of a previous crime. They testified they have known one another for a good many years, probably have, and probably were associated with one another not once but in many nefarious affairs such as this.

"This machine was taken from this place by these robbers, these burglars, these racketeers."

And more of like tenor. The district attorney was not admonished by the court, nor was the jury instructed to disregard these inflammatory statements. The only purpose in using the language complained of was to inflame and prejudice the minds of the jurors. It certainly is not argumentative.

The statement, "They all admitted that they were convicted of a previous crime," does not appear from the record to have been correct. The defendant Maniaci was charged with having violated the rules of the road. There was no proof of such conviction, although he was subjected to cross-examination. Clementi was alleged in the information to have been convicted of disorderly conduct. He admitted this allegation of the information when the jury were not present. As far as the record discloses, this was the only time he had been convicted, and that was in 1927. Picciurro was charged in the information with prior convictions for disorderly conduct, abandonment, vagrancy, assault, and robbery while armed, and a violation of the speed ordinances. These were admitted in the absence of the jury. Enea was alleged to have been convicted of violation of the rules of the road and

of violation of the National Prohibition Act. These allegations were likewise admitted in the absence of the jury. Da More was charged in the information with previous convictions for violation of the rules of the road, violation of the weights and measures law, violation of an ordinance governing truck speeds, disorderly conduct, and selling liquor after closing hours. These charges he denied. On cross-examination Da More admitted that he had been convicted for speeding, for short weight, for disorderly conduct, and for selling liquor after 1 o'clock. He denied that he had been convicted for receiving stolen property. The record of the district court of Milwaukee county in 1921, showing conviction of John D'Amore was admitted in evidence. There seems to be some question whether John Da More was the person convicted under the name of John D'Amore.

We are at a loss to understand why the district attorney indulged in this form of argument, if it may be called argument, in view of the severe criticism that conduct of this kind has received at the hands of this court. *Howard v. State* (1909), 139 Wis. 529, 121 N. W. 133; *Esterra v. State* (1928), 196 Wis. 104, 219 N. W. 349. As to the defendants the district attorney made no distinction in the statement between those who had admitted and those who had not admitted their prior conviction as charged in the information. Comment of this kind was unwarranted. The evidence in the case was ample to sustain the verdict of the jury. Comment of the kind indulged in was unnecessary and prejudicial to the state's case. If comment along this line was to be made, it should have been made with some discrimination as to the state of the evidence.

The trial judge should have interfered. There were frequent objections. He should have taken charge of the matter upon his own motion. Whether guilty or innocent, the defendants were entitled to a fair trial in accordance with the established rules of law.

Kolander testified that he had been told by one of the defendants to stand where he was; that during that time he did not move; and that the first time he moved after he was ordered to stand was after they took out State's Exhibit 1. He was then asked: "Why did you continue to stand there and not move or do anything?" To this there was objection. The court said:

"Yes, I think it is very evident why he stood there. I think the court would have done the same thing."

The defendants contend that this remark of the court constitutes prejudicial error. The basis of the claim is that the state was attempting to prove that Clementi, who had ordered Kolander to stand, had his hand in his right coat pocket in such a position as to indicate that he might have a gun in his hand. No gun was displayed, and there is nothing in the evidence, except a description of the manner in which Clementi held his hand in his pocket, to show that there was a gun other than the fact that some one of the defendants threw a revolver from the car in which they were riding just before their arrest. The remark of the court indicated that the court was of the view that there was a gun. The comment was improper and erroneous. *Drinkwater v. State* (1918), 168 Wis. 176, 169 N. W. 285.

The next assignment of error raises a question of some difficulty. Upon the trial the defendants sought to show that State's Exhibit 1, known as Pace's Races machine, was a gambling device; that the use of it was therefore forbidden; that it was contraband and had no value. The defendants rely upon *Miller v. Chicago & N. W. R. Co.* (1913) 153 Wis. 431, 141 N. W. 263. In that case plaintiffs shipped a slot machine over the defendant's railroad. The machine was broken in transit and the plaintiff sued to recover its value. The court held that it was not shown that the machine in question had any value except for use as a gambling device; that its value for that purpose could not

measure defendant's liability, and that on grounds of public policy the court would not lend its aid to the plaintiff under such circumstances. The defendants also cite *Herman v. Mackenzie* (1928), 197 Wis. 281, 221 N. W. 758, and *People v. Caridis* (1915), 29 Cal. App. 166, 154 Pac. 1061.

In *Burgess v. State* (1931), 161 Md. 162, 155 Atl. 153, 75 A. L. R. 1471, it is held that liquor manufactured and possessed in violation of the National Prohibition Act was nevertheless a subject of larceny. The holding in this case seems to be in accordance with the great weight of authority. See note, 75 A. L. R. 1479.

In *Smith v. State* (1918), 187 Ind. 253, 118 N. E. 954, L. R. A. 1918 D, 688, defendant was charged with stealing a gambling device. His defense was that the property owned and used for gambling was not the subject of larceny but the court held otherwise, citing *Osborne v. State* (1903), 115 Tenn. 717, 92 S. W. 853, where the court said:

"It is also well settled that a chattel kept for an unlawful purpose, such as intoxicating liquors kept for sale in violation of law, or gambling paraphernalia, the possession of which is prohibited, may be the subject of larceny."

The case of *People v. Caridis, supra,* is not in harmony with the clear weight of authority.

We see no inconsistency in holding that contraband property may be the subject of larceny, and in a holding that a court will not lend its aid to a party to recover the value of contraband articles in a civil action. Certainly one who has unlawfully procured possession of an article belonging to another ought not to be permitted to defend himself on the ground that that which he has stolen has no value because its use is forbidden. If it had no value, why did he steal it? It is a well-known fact that many contraband articles have been sold and that a market of a sort exists therefor. The use of gambling devices is lawful in some jurisdictions. They are more or less used in most jurisdictions, but that

they have a value which makes them a subject of larceny cannot be doubted. The state is not seeking to recover the property or its value. It is seeking to punish the defendants for violation of its criminal laws.

The contention of the defendants that the fact State's Exhibit 1 was a contraband article, and because of that fact had no value other than its junk value, cannot be sustained. The fact that the article was contraband is material on the question of its value, because it affects its usability and therefore its salability, but if, in spite of the fact it was contraband, it was a salable article, its value may be established in the usual way. If there is a market for such an article, the market value may be shown. If there is no market, recourse may be had to other proof, such as evidence given by a properly qualified person; proof of the price at which the article sold if time of sale not too remote, etc. See cases 3 Callaghan's Wis. Dig. §§ 256–261.

The trial court did not submit the question of value to the jury, although requested to do so. This was error. Inasmuch as the degree of the offense depends upon value of the articles stolen, the jury should have been directed to determine the value of State's Exhibit 1 under proper instructions. *Koch v. State* (1906), 126 Wis. 470, 106 N. W. 531.

On behalf of the defendant Enea, it is alleged that the sentence is excessive for a violation of sec. 340.43, Stats., robbery from the person, second count. The maximum sentence provided for violation of this section is seven years. The maximum sentence provided for violation of sec. 343.17, third count, larceny, is five years. The sentence was made under the provisions of the second-offense section of the statute, sec. 359.12, which provides that it applied only to a defendant who had been previously convicted of—

"any offense punishable only by imprisonment in the state prison . . . or state reformatory, by any court . . . of the United States."

Enea was sentenced for violation of the National Prohibition Act to the Milwaukee house of correction. It is claimed that the Milwaukee house of correction is a county institution, and therefore the offense is not one punishable by imprisonment in the state prison. However, he was sentenced by a court of the United States. By an arrangement entered into between the United States and Milwaukee county persons convicted in the federal courts may be confined in the Milwaukee house of correction instead of a federal prison. It is considered that a person so sentenced and confined is within the statute.

While the argument of the district attorney was improper, it does not under the facts of this case require reversal of the conviction and sentence upon the second count. The same is true of the comment of the trial judge. The evidence as to robbery is almost uncontradicted, and in any event so overwhelming as to require a conviction, unless the jury signally failed to do its sworn duty. *Schmidt v. State* (1914), 159 Wis. 15, 149 N. W. 388. It cannot be said upon an examination of the entire record that the errors complained of, so far as they relate to the robbery count, have affected the substantial rights of the defendants. Sec. 274.37, Stats. The failure of the trial court to submit the question of value on the larceny count is fatal, and the conviction upon that count cannot stand.

*By the Court.*—The judgment of conviction and sentence upon Count II for robbery is affirmed. The judgment of conviction and sentence upon Count III for larceny is reversed. The case is remanded to the trial court for further proceedings on the count for larceny.