Opinion by
 

 Stadteeld, J.,
 

 Mik Blazevich and Russell Lindie were indicted for burglary, larceny and receiving stolen goods.
 

 At the trial the Commonwealth produced testimony that the smokehouse of one Albright, the prosecutor, was broken into, and hams and other foodstuffs in the process of being cured by immersion in salt water in barrels, were stolen. The meat was identified by Al-bright, and was found in the cellar of the home of Mr. Blazevich, Sr., father of Mik Blazevich, one of the appellants.
 

 On or about January 24, 1941, around eleven o’clock at night, one Ruth Ebersole heard noises which sounded like “tearing boards off”. The sound came from the direction of a smokehouse in the back yard, next door to her home. She arose from her bed and looked out of the window toward the direction of the noise and saw two men going down the alley in the direction of Blazevich’s home. She then went downstairs and met and talked with Warren Mock and Aaron Albright who were then in Albright’s smokehouse. The lock had been
 
 *337
 
 broken. They noticed that water or “pickle” was on the floor and meats gone from a barrel in which they were undergoing a pickling process. Albright, the owner of the meat, and Mock and others immediately followed in the direction of the men who were seen by Mrs, Ebersole, and found a piece of “flitch” in the snow about fifty feet from the smokehouse. Albright identified this as part of his meat, which had been in said barrel together with two hams and two shoulders. Al-bright and his son, Doane, proceeded on to the Blazevich home which was the only house lighted. When near the Blazevich home the porch light came on and the two men whom the witnesses positively identified as the defendants, came out of the house and across the porch carrying what looked like big white bundles. The defendants proceeded around the house and disappeared. The police arrived within a short time and Albright accompanied them to the cellar, the door of which entered on the side of the house in the direction of which the defendants carried the “packages.” The stolen meat was found there in the cellar in a position as if hastily thrown there. The pieces were still dripping of brine. Albright identified the four pieces, two hams and two shoulders, as his property. He further explained this identification from their general appearance and from the peculiar manner in which he cured the meats, i. e., by drilling and plugging the drilled holes with salt.
 

 Albright told the police that the one fellow was a stranger and the other fellow was “Mik.” Albright and Doane and the police then went upstairs and found the defendants in bed. Albright identified Mik (whom he had known for fifteen years), and “that fellow there” meaning, Lindie, as the men whom he saw carrying the meat around the house toward the cellar.
 

 The meat was later returned to the smokehouse and into the barrel. Mrs. Albright testified that the meat was the same meat stolen from the barrel the day previ
 
 *338
 
 ous. She identified the meat because she had always “helped” with it.
 

 No testimony was offered by the appellants, whose statutory demurrer at the conclusion of the Commonwealth’s testimony, was refused. The appellants were found guilty. Motions in arrest of judgment and for a new trial were filed. Both motions were overruled by Patterson, P. J. and defendants sentenced the same day. These appeals followed.
 

 Appellants contend that the witnesses for the Commonwealth failed to identify the “packages” which the defendants were seen carrying to the cellar, as being the stolen meats; that Blazevich, Sr., father of one of the defendants, was the head of the home in which the stolen meat was found; that the Commonwealth is therefore founding its case by presumption upon a presumption.
 

 The Commonwealth contends that the jury properly inferred that defendants committed the crimes from the circumstances of the case taken from all the testimony. The time between the breaking open of the smokehouse and the finding of the stolen goods is confined to less than an hour. Two unidentified men were seen leaving the smokehouse and going in the direction of the home of one of the defendants; the two defendants were positively identified in said home shortly thereafter, carrying what looked like light colored packages toward the rear of the house; the meat was found in the cellar of the house in a hastily thrown position and still dripping of brine or pickle. The fact of finding the stolen meat in the cellar in such a short time after the defendants were seen to carry light colored packages in that direction, warranted the jury in finding the said packages were in fact the stolen meats.
 

 In the case at bar the evidence of guilt follows closely on the heels of the defendants, from the breaking of the smokehouse, the flight of two men in the direction
 
 *339
 
 of the Blazevich home, witnesses seeing and identifying the defendants carrying light colored packages on the lighted porch and around the house; the finding of the dripping stolen meats hastily thrown in the cellar; the defendants in bed in the home — those facts build up a set of circumstances which warranted the jury in convicting the defendants.
 

 Commonwealth contends that it is not probable that the stolen meats could have gotten into the home in any other way than by defendants; the meat was still dripping of brine when found — and no other persons than defendants were seen moving about the premises. In the ordinary affairs of life it is not probable that the person could have got possession of the property in any other way. Where in a criminal case circumstantial evidence is relied upon to sustain a conviction, the hypothesis of guilt should flow naturally from the facts and circumstances proven and be consistent with all of them. The evidence must be such as to exclude to a moral certainty every hypothesis save that of guilt; i. e., the circumstances shown must not only all be consistent with and point to the guilt of the accused but they must also be inconsistent with his innocence:
 
 Commonwealth v. Shiroff,
 
 131 Pa. Superior Ct. 565, 200 A. 204. The defendants gave no explanation of the presence of the recently stolen goods in their possession. It is well settled that where a person is found in possession of recently stolen property the burden of accounting for such possession rests upon him, and there is a presumption of guilt which will justify conviction if he does not meet it by a reasonable explanation, and it is a question for the jury to decide whether or not the defendant meets such burden:
 
 Commonwealth v. Brown,
 
 71 Superior Ct. 575.
 

 Appellants complain that the lower court committed fundamental error when it charged that recent possession of stolen goods raises a strong presumption of
 
 *340
 
 guilt of the accused. In the leading case of
 
 Commonwealth v. Newman,
 
 276 Pa. 534, 120 A. 474, the lower court charged the jury in much stronger terms than in the case at bar. In that case the lower court charged that if the possessor of purloined goods fails to meet the burden of explaining his possession “he is presumed by the law to have stolen the property.” The Supreme Court, speaking through Chief Justice Moschziskeb said, (page 541): “In other words, while the trial judge used the expression ‘presumed by law,’ what he described, taking the charge as a whole, was a presumption of fact, which, if not explained away to the satisfaction of the jury, warranted a finding in accordance therewith; there is no likelihood the instructions were misunderstood in this respect by those to whom they were addressed.”
 

 In the case at bar, appellants took only a general exception to the charge. Taken as a whole, we believe that there is no 'cause for complaint Jin respect to the charge. The case was ably tried and fairly submitted, and the testimony fully supports the verdict.
 

 Judgment affirmed.