[Crim. No. 4757.   In Bank.   Apr. 29, 1947.]

In re JACOB WOLFSON, on Habeas Corpus.

John R. Golden for Petitioner.

Robert W. Kenny and Fred N. Howser, Attorneys General, and David K. Lener, Deputy Attorney General, for Respondent.

SCHAUER, J.—By application for relief through the writ of habeas corpus petitioner attacks the adjudication that he is an habitual criminal, punishable under section 644 and related sections of the Penal Code. We have concluded that petitioner is an habitual criminal twice previously convicted and "shall be deemed to be imprisoned for life and shall be eligible for release on parole after he shall have served a minimum term of seven calendar years." (Pen. Code, § 3048.5, ad. Stats. 1945, ch. 934, § 4.)

It appears that petitioner was charged with the primary offense of grand theft, allegedly committed on or about August 3, 1943, and with three prior convictions of felony, as follows: "Entering and Larceny" in Pennsylvania in 1913, for which he allegedly served a term of imprisonment "in a penal institution"; "Larceny and Receiving Stolen Goods" in Pennsylvania in 1930, for which he allegedly served a term "in the State Prison"; "Forgery" in New Jersey in 1923, for which he allegedly served a term "in the State Prison." Petitioner pleaded guilty to the primary crime, denied the 1913 prior conviction, and admitted the 1930 and 1923 prior convictions as charged. The trial court found that petitioner had suffered the 1913 prior conviction. It rendered its judgment of conviction of the primary offense, recited the three prior convictions suffered by petitioner, and declared that petitioner "is adjudicated to be an habitual criminal." It is such determination of status that petitioner attacks.

Respondent concedes and (it appears from the transcript of the proceedings at time of sentence) the trial court recognized that the prior conviction of forgery (New Jersey, 1923) could not constitute a part of the basis of an adjudication of habitual criminality because when petitioner committed the primary offense (August 3, 1943) the applicable California statute (Pen. Code, § 644, as am. Stats. 1941, ch. 106, § 10) did not so provide. Petitioner contends and respondent denies that the 1913 and 1930 Pennsylvania convictions do not conform to the requirements of section 644 of our Penal Code and that petitioner, therefore, is not subject to punishment as an habitual criminal twice previously convicted. These conflicting contentions raise the issues which we must resolve.

The pertinent provision of section 644 of the Penal Code (as am. Stats. 1941, ch. 106, § 10) is that ''(a) Every person convicted in this State of any felony who shall have been previously twice convicted upon charges separately brought and tried, and who shall have served separate terms therefor in any State prison and/or Federal penitentiary, either in this State or elsewhere, of the crime of . . . burglary, . . . grand theft, . . . feloniously receiving stolen goods, . . . shall be adjudged an habitual criminal and shall be punished by imprisonment in the state prison for life.'' Section 668 (Stats. 1927, p. 1065) provides (now, as in 1943) that ''Every person who has been convicted in any other state, government, or country, of an offense which, if committed within this state, would be punishable by the laws of this state by imprisonment in the state prison, is punishable for any subsequent crime committed within this state in the manner prescribed in sections 644, 666 and 667, and to the same extent as if such prior conviction had taken place in a court of this state.''

A prior conviction under the law of a sister state can support a California adjudication of habitual criminality only if the minimum adjudicated elements of the foreign offense meet the minimum elements (as defined by the California statute in effect on the date of the commission of the foreign crime) of a California offense which was enumerated in section 644 on the date of the commission of the primary (California) crime. (*In re McVickers* (1946), 29 Cal.2d 264, 278 [176 P.2d 40]; *In re Seeley* (1946), 29 Cal.2d 294, 299 [176 P.2d 24]; *In re Harincar* (1946), 29 Cal.2d 403, 404

[176 P.2d 58]; earlier California cases are collected in 82 A.L.R. 357; 116 A.L.R. 216-217, 218; 132 A.L.R. 97, 99.)

■ Where an adjudication of habitual criminality is attacked through application for habeas corpus it is now settled that this court will look to the judically noticed law of the sister state* and to documentary proof of the foreign conviction (authenticated copies of the foreign prison record, commitment, judgment and indictment) to determine what were the adjudicated elements of the foreign offense. (*In re McVickers* (1946), *supra*, pp. 279, 280; *In re Seeley* (1946), *supra*, p. 299; *In re Harincar* (1946), *supra*, p. 406.)

■ The findings that petitioner was convicted merely of "Larceny" in Pennsylvania in 1913 and in 1930 are not findings that he suffered prior convictions of the California offense denominated "grand theft" and enumerated in section 644 of our Penal Code. "Larceny" in Pennsylvania at the times here mentioned (1913 and 1930) was not defined, but only made punishable, by statute (1860, Mar. 31, P.L. 382, § 103; 18 Purdon's Pa.Stats., § 4807, Historical Note); therefore, the elements of the offense were those of the common law offense of larceny, a crime which was committed when personal property of any value was stolen (2 Wharton's Crim. Law, 12th ed., §§ 1096, 1097, 1192; *Com.* v. *Doran* (1941), 145 Pa.Super. 173, 174 [20 A.2d 815]). Thus a finding that petitioner was convicted of "Larceny" in Pennsylvania is only a finding that he was convicted of stealing property of no particular value. (*In re McVickers* (1946), *supra*, pp. 277, 278 of 29 Cal.2d; *In re Seeley* (1946), *supra*, p. 301 of 29 Cal.2d.) But under the California statute in effect in 1913, to constitute the offense one within the purview of section 644, the property stolen (unless it was of certain kinds not here involved) must have been of a value exceeding $50. (Pen. Code, § 487, as am. Stats. 1907, p. 113; *In re Harincar* (1946), *supra*, p. 407 of 29 Cal.2d.) And under the California statute in effect in 1930, "grand theft" was committed only when property of a value exceeding $200 (or property of certain kinds not here involved) was stolen. (Pen. Code, § 487, as am. Stats. 1929, p. 365.)

■ Petitioner and respondent have introduced in evidence authenticated copies of the Pennsylvania indictments

---

*"Courts take judicial notice of the following facts: . . . the laws of the several states of the United States and the interpretation thereof by the highest courts of appellate jurisdiction of such states." (Code Civ. Proc., § 1875, par. 3.)

(which, in accord with Pennsylvania practice, bear notations of the plea of the defendant and the sentence imposed). As to the larcenies these documents show that petitioner, in Philadelphia County, by indictment No. 929, September sessions, 1913, was charged with and that he pleaded guilty to theft of postage stamps and money of the value of $9.18, and that by indictment No. 68, March sessions, 1930, he was charged with and that he pleaded guilty to theft of clothing of the value of $38.50. Therefore, the adjudicated elements of neither the 1913 nor the 1930 Pennsylvania larceny meet the minimum elements of the crime defined by the pertinent California statute (Pen. Code, § 487, *supra*).

Respondent has introduced in evidence a certified copy of Philadelphia indictment No. 930, September sessions, 1913. He urges that this document shows a prior conviction of grand larceny within the purview of section 644. So far as it relates to this contention indictment No. 930 shows that petitioner was charged with and pleaded guilty to larceny of goods of the value of $89. But this larceny was legally a crime entirely unrelated to case No. 929. It appears from the California record that petitioner denied the 1913 Pennsylvania conviction and that the fact of such conviction was proved to the California trial court by a certified copy of the Pennsylvania conviction in case No. 929; it was not proved to or determined by the trial court that petitioner had suffered a conviction in case No. 930. Therefore, the latter conviction, having never been before the trial court of this state, is not available to support this adjudication of habitual criminality.

From the 1913 Pennsylvania indictment and commitment it further appears (and it was proved to the California trial court) that in case No. 929 petitioner, in Philadelphia County, was also charged with and pleaded guilty to entering a building on September 24, 1913, with intent to steal personal property, and that he was sentenced to "undergo imprisonment in separate or solitary confinement at labor, in the Philadelphia County Prison, for the term of Two (2) years." The adjudicated elements of the offense of which petitioner on his plea of guilty was convicted, are identical with those of the then California felony of second degree burglary as defined by the pertinent statutes. (Pen. Code, § 459, as am. Stats. 1913, p. 228, in effect August 10, 1913; §§ 460 and 461, as am. Code Amdts. 1875, 1876, p. 112.)

26

Therefore, so far as the substance of the offense is concerned this 1913 conviction was competent to support the determination of habitual criminality.

Petitioner contends that for the 1913 Pennsylvania conviction he did not serve a term in a state prison or federal penitentiary as required by section 644 of the Penal Code. The California information charged and the trial court found that petitioner served the term "in a penal institution." This is insufficient to bring the prior conviction within section 644, for the phrase "penal institution," as used by the Legislature in other sections of the Penal Code which deal with repeated offenders, refers to a county jail as well as a state prison or federal penitentiary. Thus section 666 provides for punishment of offenders who have suffered a previous conviction of petty theft and "served a term therefor in any penal institution." The "penal institution" there referred to must include a county jail, for in California one who is convicted of petty theft and who has suffered no previous conviction can be imprisoned only in a county jail. (Pen. Code, § 490.)

However, the determination of service of a term of imprisonment, a necessary part of the determination of habitual criminality, "does not involve the validity or finality of a judgment of conviction, as such," and both petitioner and respondent, as already stated, may refer to matters outside the California judgment roll in order to show the actual status of petitioner. (*In re McVickers* (1946), *supra,* pp. 271, 272, 279 of 29 Cal.2d; *In re Seeley* (1946), *supra,* pp. 298, 299 of 29 Cal.2d.) Here, as the California record of proceedings at the time of sentence shows, it was proved to the trial court that petitioner served the term in the Philadelphia County Prison and the trial court concluded that such imprisonment satisfied the requirement of section 644. A review of the pertinent Pennsylvania law as to punishment and penal institutions (hereinafter set out) supports that conclusion.

One found guilty of entering with intent to steal in Pennsylvania in 1913 was punished by fine and "imprisonment by separate or solitary confinement at labor not exceeding ten years." (1863, April 22, P.L. 531, § 2; 18 Purdon's Pa.Stats., § 4901, Historical Note.) There were in Pennsylvania "state penitentiaries" wherein were imprisoned offenders sentenced to "imprisonment at labor, by separate or solitary confinement, for any period not less than one year" (19 Purdon's Pa.Stats., § 1021) and there were "county

jails," a "reformatory," a "house of correction" and "work-houses" wherein were confined offenders suffering lesser sentences. (61 Purdon's Pa.Stats.) There was also the "Philadelphia County Prison," wherein were confined various types of offenders sentenced in Philadelphia County; its inmates comprised persons sentenced to separate or solitary confinement at labor for a "period of time under two years" (Id. § 636), as well as those similarly sentenced "for any period not less than one year" (19 Purdon's Pa.Stats., § 1021), and convicts awaiting the death penalty (61 Purdon's Pa.Stats., § 644).

The operation of the penal system as it applied to one in petitioner's position has been explained by a Pennsylvania court (in *Com.* v. *Arbach* (1934), 113 Pa.Super. 137 [172 A. 311]) as follows:

"The sentencing of convicts both as respects the term of imprisonment and where they shall be confined is fixed by statute. An examination of the penal clauses affixed to offenses by the Penal Code of 1860 (March 31, 1860, P.L. 382) will show that certain crimes or misdemeanors are punishable by 'imprisonment,' without more, or by 'simple imprisonment.' These mean confinement in a county jail or workhouse. *Com. ex rel. Stanton* v. *Francies,* 250 Pa. 350, 352, 95 A. 798; *Com.* v. *Fetterman,* 26 Pa.Super.Ct. 569. Certain other crimes are punishable by imprisonment at labor, by separate or solitary confinement, or by separate or solitary confinement at labor. These mean confinement in a penitentiary, except as hereinafter stated. Id. The Criminal Procedure Act of 1860 (March 31, 1860, P.L. 427) divides sentences for penitentiary offenses into two classes; (1) Those for a period of a year or longer; (2) those for less than a year. As to the former, it provides in section 74 (as amended by Act of February 28, 1904, P.L. 25 [19 PS sec. 1021]) that: 'Whenever any person shall be sentenced to imprisonment at labor, by separate or solitary confinement, for any period not less than one year, the imprisonment and labor shall be had and performed in the state penitentiary for the proper district: Provided, That nothing in this section contained shall prevent such person from being sentenced to imprisonment and labor, by separate or solitary confinement, in the county prisons now or hereafter authorized by law to receive convicts of a like description.' This proviso . . . does not give a court the power to elect to sentence a person, who

28

has been convicted of a crime punishable by imprisonment at labor by separate or solitary confinement, to either the penitentiary or the county jail or prison, except in two instances: (1) Where the act defining the offense and fixing the penalty expressly gives such option (see Criminal Code, inter alia, sections 4, 5, 20, 23, 41, 78, 98, 127, 128 [18 PS secs. 260, 253, 552, 2934, 2281, 2225, 2112, 211, 2451]; [1]or (2) where the county prison to which the convict is sentenced comes within the language of the proviso, and was in 1860, at the passage of the Criminal Procedure Act, or afterwards, 'authorized by law to receive convicts of a like description,' that is, convicts sentenced to imprisonment at labor, by separate or solitary confinement. Thus by Act of February 8, 1842, P.L. 14, sec. 11 (19 PS sec. 1022), it was provided that: 'Every person who shall hereafter be convicted in any court of criminal jurisdiction, in the city or county of Philadelphia, of any crime, the punishment of which would now be imprisonment in the state penitentiary, may be sentenced by the proper court to suffer imprisonment, by separate or ,solitary confinement, at labor, either in the state penitentiary, or in the Philadelphia county prison, at the discretion of the courts, excepting in cases of murder in the second degree, and manslaughter.' The Philadelphia County Prison comes within the proviso of section 74 of the act of 1860, *supra,* as being '*now* [that is, in 1860] . . . authorized by law to receive convicts of a like description.' . . .

"Section 75 of the Criminal Procedure Act of 1860 . . . , 19 PS sec. 891, governs sentences to imprisonment at labor by separate or solitary confinement, for a period of less time than one year, and provides that: 'No person shall be sentenced to imprisonment at labor by separate or solitary confinement for a period of time less than one year, except in the counties where, in the opinion of the court pronouncing the sentence, suitable prisons have been erected for such confinement and labor: . . . Provided, That in the counties where suitable prisons for separate or solitary confinement at labor do not exist, and the sentence shall be less than one year, simple imprisonment shall be substituted in all cases for the separate and solitary confinement at labor required by the act . . .' It also provides that all persons sentenced to simple imprisonment for any period of time shall be confined in the county jail where the conviction shall take place.

---

[1]The statute defining petitioner's offense gave no such option.

"This section gives the court in any county, where in its opinion a suitable prison has been erected for furnishing convicts with separate or solitary confinement and labor, *in imposing sentences for less than a year* upon persons convicted of crimes which require, as a penalty, imprisonment in a penitentiary, power to sentence them to separate or solitary confinement at labor in such suitable county prison; and if there is no such suitable county prison, to sentence them to simple imprisonment in the county jail. It has no application at all to sentences for a year or longer, which, whether there be a suitable county prison or not, in all crimes *requiring* a penalty of imprisonment at labor, by separate or solitary confinement, must be to the penitentiary of the proper district, unless the county prison is by law authorized to receive such convicts. Section 75, of itself, does not furnish such authority, except as to sentences for less than a year."

It thus appears that petitioner, necessarily sentenced to separate imprisonment at labor, and in fact sentenced to two years of such imprisonment, must have served his term in a Pennsylvania state penitentiary had he been so convicted and sentenced in some county other than Philadelphia. So far as petitioner and other offenders similarly sentenced were concerned, occupance of the Philadelphia County Prison, because of "the character of the institution and its inmates together with the nature of the proceedings leading to confinement therein," was equivalent to service of time in a state prison or federal penitentiary. (*In re Gilliam* (1945), 26 Cal.2d 860, 863-864 [161 P.2d 793], and cases there cited; see *State* v. *Clementi* (1937), 224 Wis. 145 [272 N.W. 29, 33]; *State* v. *Blankenship* (1943), 242 Wis. 195 [7 N.W.2d 424]; *State* v. *Jardine* (1943), 242 Wis. 200 [7 N.W.2d 426].)

▮▮▮ The 1930 conviction, in Delaware County, Pennsylvania, was upon petitioner's plea of guilty to the charge of larceny of described clothing of the value of $38.50 and on the same day feloniously receiving the same goods knowing them to have been stolen. In Pennsylvania "In every indictment for feloniously stealing property it shall be lawful to add a count for feloniously receiving the said property, knowing it to have been stolen; . . . and it shall be lawful for the jury trying the same to find a verdict of guilty either of stealing the property, or of receiving the same, knowing it to have been stolen. . . ." (1860, March 31, P.L. 427, § 24; 19 Purdon's Pa.Stats., § 411.) Under this statute a defendant cannot properly be convicted of both receiving stolen property

and larceny of the same property in the same transaction; the offenses are distinct and inconsistent. (*Com.* v. *O'Neill* (1901), 10 Pa.Dist. 227, 18 Lanc. 85; *Com.* v. *Joulwan* (1920), 16 Sch. 232; *Com.* v. *Maxberry* (1930), 13 Pa.D.&C. 371, cited 136 A.L.R. 1089; *Com.* v. *Simpson* (1946), 60 York 5.) But it appears that where the point has not been raised convictions of both larceny and feloniously receiving stolen goods, based on substantially the same transaction, have been affirmed. (*Com.* v. *Witmer* (1919), 33 York 101; *Com.* v. *Lindie* (1942), 147 Pa.Super. 335 [24 A.2d 39]; *Com.* v. *Wiand* (1943), 151 Pa.Super. 444 [30 A.2d 635, 638].) It would seem that judgments based on such dual convictions are erroneous but not void. Also, where there were multiple and inconsistent charges based on the same transaction (1. entry by breaking into a certain garage with intent to steal certain goods; 2. entry without breaking into the garage with the intent to steal the same goods; 3. receiving the same goods knowing them to have been stolen) a general plea of guilty, and a single judgment which did not specify the count or precise offense upon which it was based, such judgment was held valid as against attack through habeas corpus. (*Com. ex rel. Vincent* v. *Smith* (1938), 132 Pa.Super. 469 [1 A.2d 838].) Thus it appears that the 1930 dual ground conviction and judgment in Pennsylvania is a valid judgment there.

Petitioner now seeks to go behind, not merely the California determination of the 1930 prior conviction of receiving stolen goods, made on petitioner's admission of such conviction, but behind the Pennsylvania judgment rendered on his plea of guilty. He seeks to show that in fact the Pennsylvania charges of larceny and of receiving stolen goods were based on one criminal act of petitioner, and that such act amounted to larceny exclusively. This he cannot do. "Sections 644 and 688 of the Penal Code contemplate that a defendant shall have been *convicted* in a judicial proceeding of a crime enumerated in section 644. All the essential facts of his guilt must be res judicata. In applying section 644 the courts of this state may take cognizance only of what has been lawfully adjudicated. Any other rule would lead to absurd consequences. If our trial courts could take evidence to prove, and upon that evidence adjudicate for themselves, that a defendant had been convicted in another state of [a crime enumerated in section 644] . . . despite the fact that he had been there charged, tried, and convicted under a

statute defining another offense . . . , then our courts could also take evidence and decide that the defendant had been convicted in the other state of . . . any . . . offense enumerated in section 644, even though he had never been charged with, placed upon trial for, or adjudged guilty of, any of those offenses in such other state.'' (*In re McVickers* (1946), *supra*, p. 276 of 29 Cal.2d.) Equally absurd consequences would result if the courts of this state could take evidence to prove, and upon that evidence adjudicate for themselves, that a defendant was not guilty of a crime with which he had been charged, for which he had been tried or to which he had pleaded guilty, and of which he had been convicted in another state. It is not legally impossible that petitioner on the same day stole goods and, in a separate transaction, received the same goods knowing them to have been stolen. It has been finally adjudicated that he did so. Even if the Pennsylvania judgment were erroneous, a matter into which we cannot inquire, it has been duly certificated to us as the solemn judgment of a sister state, the jurisdiction of the court which rendered it is not questioned, and it is therefore entitled to full faith and credit. (See 24 C.J.S., p. 1156, § 1961.)

It has been suggested, as to the 1930 Pennsylvania conviction, that we must assume that petitioner pleaded guilty to and was adjudged guilty of the least offense charged in the Pennsylvania indictment. But it does not appear that the crimes charged were mere alternate statements of the same acts or that either was in fact included in the other. On the face of the pleading they were distinct offenses and petitioner, as stated, could have been guilty of both. Furthermore, it cannot be determined by reference to punishment that one of the offenses charged in Pennsylvania in 1930 was ''less than'' the other. As already stated, larceny was punishable by separate or solitary confinement at labor for not more than ten years; receiving stolen goods was punishable by ''like pains and penalties which are by law imposed upon the person who shall have actually stolen . . . the same'' (1909, April 23, P.L. 159, § 1; 18 Purdon's Pa.Stats., § 4817, Historical Note) ; and petitioner was sentenced to undergo imprisonment by separate and solitary confinement in the Eastern Penitentiary for two to four years.

Petitioner contends that in any event a conviction of receiving stolen goods in Pennsylvania in 1930 is not avail-

able to support a California determination of habitual criminality. Section 668 of the Penal Code, previously quoted, provides that one convicted in another state of a crime "which, if committed within this state would [and petitioner emphasizes the fact that the section says *would,* not *could*] be punishable by the laws of this state by imprisonment in the state prison" is punishable as if such conviction had been suffered in California. In 1930, the punishment prescribed by a judgment of conviction of receiving stolen goods fixed the character of the California offense as felony or misdemeanor. (Pen. Code, §§ 17, 496.) "A [California] crime which may be punished by imprisonment in the state prison, although the statute confers a discretion on the court to impose a mere county jail sentence, is deemed to be a felony, unless the court actually exercises that discretion by imposing only a fine or a jail sentence. [Citations.]" (*In re Rogers* (1937), 20 Cal.App.2d 397, 400 [66 P.2d 1237]; see 95 A.L.R. 1121.) The 1930 Pennsylvania crime of receiving stolen goods, on the other hand, was by statute denominated a felony regardless of the imposed punishment (which could be fine, imprisonment by separate or solitary confinement at labor for any term not exceeding three years, or both). (1860, March 31, P.L. 382, § 103; 1909, April 23, P.L. 159, § 1; 18 Purdon's Pa.Stats., §§ 4807, 4817, Historical Notes.)

Problems similar to that presented by petitioner's last stated contention have arisen in Indiana and it has been held that "where the previous offense relied upon was committed in another jurisdiction, proof that the punishment prescribed by the law of that jurisdiction consisted of death or imprisonment in the state prison of that jurisdiction will sustain the allegation that the offense relied upon was a felony. *Kelley* v. *State* (Ind.Sup. 1933) [204 Ind. 612] 185 N.E. 453, 458. Proof that the punishment actually imposed for the offense committed in another jurisdiction did in fact consist of imprisonment in the state prison of that jurisdiction will also sustain the allegation that the offense relied upon was a felony." (*Dougherty* v. *State* (1934), 206 Ind. 678 [191 N.E. 84, 88].) We agree with the conclusion of the Indiana court. The offense which petitioner was adjudged to have committed in Pennsylvania in 1930 and the punishment which he there underwent are shown to be substantially equivalent to the California crime of receiving stolen goods punished by imprisonment in a California state prison, i. e., to the

crime of "feloniously receiving stolen goods" enumerated in section 644 of our Penal Code (Stats. 1941, ch. 106, § 10).

    For the reasons above elucidated we hold that petitioner is a person properly determined to be an habitual criminal who has suffered two previous convictions within the purview of section 644 as it read when he committed the primary offense (Stats. 1941, ch. 106, § 10). But his primary offense—grand theft—is not one of the substantive offenses now enumerated in section 644 (Stats. 1945, ch. 934, § 1). Therefore, according to section 3048.5 of the Penal Code (Stats. 1945, ch. 934, § 4), he is a person previously determined to be an habitual criminal, who could not be determined to be an habitual criminal under section 644 as it now reads; as such he "shall be deemed to be imprisoned for life and shall be eligible for release on parole after he shall have served a minimum term of seven calendar years." (*In re Harincar*, (1946), *supra*, p. 408 of 29 Cal.2d.)

Since petitioner has not shown that he is presently entitled to release the writ is discharged and he is remanded to custody.

Gibson, C. J., Shenk, J., and Carter, J., concurred.

SPENCE, J.—I concur with the conclusion reached in the majority opinion that the writ should be discharged and that the petitioner should be remanded to custody. I still adhere, however, to the views expressed in my dissenting opinions in *In re McVickers*, 29 Cal.2d 264, 281 [176 P.2d 40], and *In re Seeley*, 29 Cal.2d 294, 303 [176 P.2d 24], and base my concurrence here upon those views rather than upon the views stated in the majority opinion. As stated in the dissenting opinion in *In re Seeley, supra,* at page 317, I believe that the scope of review in this proceeding on habeas corpus, where it is sought to attack the validity of the judgment adjudicating petitioner to be an habitual criminal, "extends only to the question of the jurisdiction of the trial court to make the habitual criminal adjudication; that the inquiry does not extend beyond the face of the record in the criminal proceeding in which such adjudication was made; and that if it does not affirmatively appear from the face of such record that the trial court was without jurisdiction to make such adjudication, then the habitual criminal adjudication should not be nullified."

Here the judgment adjudicating petitioner to be an habitual criminal has long since become final. No lack of jurisdiction to make such adjudication appears upon the face of the record in the criminal proceeding in which such adjudication was made. If the review in this proceeding is confined to its proper scope, it is at once apparent that petitioner is not entitled to his release.

Edmonds, J., and Traynor, J., concurred.