### DOUGHERTY *v.* STATE OF INDIANA.

[No. 26,119.   Filed June 22, 1934.]

*Pete H. Dawson,* for appellant.

*James M. Ogden,* Attorney-General, and *Robert L. Bailey,* Assistant Attorney-General, for the State.

TREANOR, J.—Appellant was convicted upon an affidavit[1] drawn under §2447.2, Burns Ann. Ind. St. Supp. 1929, §10-703, Burns Ind. St. Ann. 1933, §2441, Baldwin's 1934, Acts 1927, ch. 49, §1, p. 131,[2] which defines as an offense the possession of burglar tools with intent to commit a burglary by a person previously convicted of a felony. He assigns as error: (1) the overruling of his motion in arrest of judgment; and (2) the overruling of his motion for new trial. The motion in arrest of judgment is upon the ground that "the facts stated in the affidavit do not constitute a public offense under the laws of the State of Indiana," appellant contending in particular that the offense attempted to be charged is not stated because "the date of the commission of the former crime by the accused, the place, together with the fact and date of conviction and sentence, was not set forth in the affidavit."

Appellant did not attack the affidavit by motion to quash for lack of certainty; and if an affidavit is substantially in the language of a statute which defines an offense and states directly and specifically what acts shall constitute the offense, judgment will not be arrested on the ground that the facts stated in the affidavit do not constitute a public offense.

Note 1. "Dan Power, being duly sworn on his oath, says that Edward Dougherty, on the 21st day of March, 1931, at the County of Clinton, in the State of Indiana, who was then and there a person that had been previously convicted of a felony, to wit: murder, did then and there unlawfully and feloniously have in his possession burglar tools and implements with intent to commit the crime of burglary, contrary to the form," etc.

Note 2. "If any person previously convicted of a felony be found having in his possession any burglar tools or implements with intent to commit the crime of burglary, such person shall be deemed guilty of a felony, and on conviction thereof shall be imprisoned not less than two (2) years nor more than fourteen (14) years, and the possession of such tools or implements shall be prima facie evidence of the intent to commit burglary."

*Mann* v. *State* (1933), 205 Ind. 491, 186 N. E. 283. And it will be noted that the affidavit upon which appellant was tried and convicted followed the language of the statute.[3] Further, it is provided in §9-1127, Burns, etc., 1933, §2225, Burns etc., 1926, Acts 1905, ch. 169, §192, p. 584, that: "No . . . affidavit shall be deemed invalid, . . . nor shall the trial, judgment or other proceeding be stayed, arrested or in any manner affected for any of the following defects: . . .

"Tenth. For any other defect or imperfection which does not tend to the prejudice of the substantial rights of the defendant upon the merits."

In support of his contention that "the date of the commission of the former crime by the accused, the place, together with the fact and date of conviction and sentence" should have been set forth in the affidavit, appellant cites the case of *Evans* v. *State* (1898), 150 Ind. 651, 653, 50 N. E. 820, which contains the following statement:

> "The doctrine that when a statute imposes a greater punishment upon second and subsequent convictions of an offense, that the former conviction must be alleged in the indictment and proved at the trial, or the same can only be punished as a first offense, is sustained by the great weight of the authorities."

It is apparent from the opinion of the court in that case that the alleged defect in the information was a complete absence of an allegation of a previous conviction. The court did not purport to set out the particular facts concerning such former conviction which need to be alleged to constitute a valid charge and to support a

*Note 3.* "A motion in arrest of judgment does not question the affidavit for uncertainty in the statement of facts constituting the offense intended to be charged in the affidavit. *Rowe* v. *State* (1921), 191 Ind. 536, 133 N. E. 2; §2326, Burns 1926. Such uncertainty can only be questioned by a motion to quash and not by motion in arrest. *Rowe* v. *State, supra.*" *Csallo* v. *State* (1927), 198 Ind. 693, 154 N. E. 671.

judgment assessing the punishment prescribed "upon a second conviction." Further, the question presented for review did not relate to the sufficiency of the indictment as against a motion in arrest of judgment. We hold that the facts alleged in the affidavit in the instant case were sufficient to constitute a public offense.

Under his second assignment of error appellant relies first upon the alleged irregularity and error in the admission of conversations between defendant and witnesses in which the defendant admitted having been previously convicted of murder. Appellant's statements were competent to be received in evidence against him as an admission of a material fact in issue,[4] unless the fact sought to be established by the statements belongs to a class of which proof is forbidden by use of admissions.[5] Also, in determining the compe-

*Note 4.* ". . . all admissions are usable against the accused in a criminal case precisely as against a party in a civil case (ante §821); i. e., so long as they have satisfied the confessional rule, or fall without its scope, they are to be tested, like other admissions, by the ensuing principles common to all admissions." Wigmore on Evidence, Vol. 2, §1050.

*Note 5.* "For the purpose of proving certain classes of facts, the use of admissions has by some courts been forbidden.

"(1)   In evidencing the contents of a document, it has sometimes been thought that the opponent's admissions—at least, his oral admissions—should not be received until the original had been accounted for as lost or unavailable.   This view, from time to time advanced in early English rulings, was definitely repudiated in *Slatterie* v. *Pooley* in a forceful opinion by Baron Parke; but has nevertheless obtained some vogue in the courts of this country. Its reasoning, and the state of the law, are examined elsewhere (post, §§1255-1257), in dealing with the rule requiring the production of documentary originals." Wigmore on Evidence, Vol. 2, §1054.

"The proposition that production should be dispensed with where the opponent has already admitted the contents of a document to be as alleged, is a plausible one, and its denial seems at first sight a mere insistence on an unnecessary formality.   The doctrine that production is in such case exceptionally dispensed with owes its best defense and its usual name to the following opinion of Baron Parke:

"1840, Parke, B., in *Slatterie* v. *Pooley*, 6 M. & W. 664, 'If such evidence were inadmissible, the difficulties thrown in the way of almost every trial would be nearly insuperable.   The reason why such parol statements are admissible,   .   .   .   is that they are not open to the same objection which belongs to parol evidence from

tency of the testimony as to defendant's admissions we must consider that an authenticated copy of the court record of a conviction of a person bearing appellant's name was admitted in evidence.

As pointed out in the excerpt from *Wigmore, supra*, note 5, there are certain restrictions upon the use of admissions to prove contents of documents. But where the defendant's oral admission bears upon some fact in relation to a document which the document itself would not be sufficient to either prove or disprove, as in this case the appellant's identity with the person referred to in the attested document, evidence of such admission is competent; and where the document itself is offered in evidence the appellant's oral admission is not improperly received even though it bears upon certain other facts

other sources, where the written evidence might have been produced; for such evidence is excluded from the presumption of its untruth arising from the very nature of the case where better evidence is withheld; whereas what a party himself admits to be true may reasonably be presumed to be so. The weight and value of such testimony is quite another question.'

"But there is much to be said against the recognition of such an exception; and the sum of these objections is found in the following passages:

"1845, Pennefather, C. J., in *Lawless* v. *Queale*, 8 Ir. L. R. 832, 835: 'I cannot subscribe to what was said by Parke, B., in that case . . . The doctrine there laid down is a most dangerous proposition. By it a man might be deprived of an estate of £10,000 per annum, derived from his ancestors by regular family deeds and conveyances, by producing a witness, or by one or two conspirators, who might be got to swear they heard the defendant say he had conveyed away his interest therein by deed, had mortgaged or otherwise incumbered it; and thus, by this facility so given, the most open door would be given to fraud, and a man might be stripped of his estate through this invitation to fraud and dishonesty. It is said, it is evidence against the person himself who made this admission, and that there is no danger of untruth in what a man admits against himself. Supposing the admission to be proved, is there no danger of mistake or misconception of the terms of a written instrument? It may be long and difficult; one part or clause may explain or qualify another; an unprofessional or ignorant man may be led to believe it may be so-and-so, whereas the real and true meaning may be the very reverse or something very different. But, produce the deed or writing, *"litera scripta manet."* On which side is the security, and why depart from the rule that, if you want to give evidence of the contents of a writing, the writing itself must be produced? Is there no danger of

wholly provable by the document.[6]   In this case the proof of the contents of the record of an alleged previous conviction does not depend upon the oral testimony of appellant's admissions but upon the properly authenticated copy of the records of the court in which such conviction was had, which copy was itself received in evidence.   The chief value of appellant's admission was that

untruth or misrepresentation, when used against the party making the admission?   That is the ground put by Parke, B., and in which I cannot agree, when I know by experience how easy it is to fabricate admissions, and how impossible to come prepared to detect the falsehood.   Why are writings prepared at all but to prevent mistakes and misrepresentations?   And why, having taken that precaution, with such writing at hand and capable of being produced, is the same to be laid aside and inferior and less satisfactory evidence resorted to?'

"1850, Maule, J., in *Boulter* v. *Peplow*, 9 C. B. 493, 501:  'It *(Slatterie* v. *Pooley)* is certainly not very satisfactory in its reasons. . . .   What the party himself says is not before the jury; but only the witness' representation of what he says.'

"Of the two arguments here offered in opposition, the first amounts to little.   The possibility of error in an opponent's own understanding of the terms of a document is not great; and, so far as it exists, it can do little harm, because the opponent's extrajudicial admission is merely some evidence, and not conclusive (ante, §1058) ; he may still prove the contents as he now knows them or may have the document produced.   But the second argument—that it is easy to fabricate alleged oral admissions—is the real and serious objection to the doctrine.   It may be conceded that the opponent's admission of contents is satisfactory evidence, *if* he made such an admission.   But did he make it?   Here we are left to choose between conflicting oral testimonies; and it does seem undesirable to leave the matter to depend on the credibility of this or the other witness when an inspection of the document itself would speedily settle the controversy.

"The proper solution of the dilemma would be this:   When an admission of the contents is testified to, let production be dispensed with; but if the fact of the admission is 'bona fide' disputed by the opponent and some testimony to that effect is put in by him, then let production be required or the document's absence be accounted for."   Wigmore on Evidence, Vol. 2, §1255.

*Note 6.*   "(1)   The fundamental notion of the rule requiring production is that in writings the smallest variation in words may be of importance, and that such errors in regard to words and phrases are more likely to occur than errors in regard to other features of a physical thing (ante §1811).   Thus the rule applies only to the *terms of the document,* and not to any other facts about the document.   In other words, the rule applies to exclude testimony designed to establish the terms of the document, and requires the document's production instead, but does not apply to exclude testimony which concerns the document without aiming to establish its terms. . . ."   Wigmore on Evidence, Vol. 2, §1242.

it tended to identify him as the Edward Dougherty whose conviction was shown by the court record.

Appellant cites *Farley* v. *State* (1877), 57 Ind. 331, as authority for the proposition that the evidence of his admission of a previous conviction was improperly received. In that case it was held improper to prove by the accused on cross-examination when a witness in his own behalf that he had been previously convicted. The holding in that case was based upon (1) the proposition that it was improper to impeach or sustain a witness in a criminal cause by proof of general moral character and (2) the proposition that "where the question involves the fact of a previous conviction, it ought not to be asked; because there is higher and better evidence which ought to be offered." It is no longer the law in Indiana that a witness may not be impeached by proof of general moral character; and such proof may consist of admitting, on the witness stand, a former conviction. *Dotterer* v. *State* (1909), 172 Ind. 357, 88 N. E. 689. The reasoning of *Farley* v. *State, supra,* cannot apply to the facts of this case.

The trial court did not err in permitting the witnesses to testify to appellant's admission.

Appellant urges that the court erred in admitting certain exhibits which consisted of tools, implements, dynamite caps, and a sack which had contained dynamite. The sack which had contained dynamite was in appellant's possession at the time of his arrest and the other exhibits objected to were found immediately after his arrest in the automobile in which he had been riding just prior to his arrest. There was no error in admitting the exhibits in evidence.

Appellant also insists that it was error to permit a witness to testify that certain of the exhibits were tools

and implements such as are ordinarily used by burglars, without the witness first having qualified as an expert. The witness testified that he was a sergeant of police, had been with the Chicago police department since 1907, that in this capacity he had made various arrests of burglars while "in their activities of burglarizing places," and that in making those arrests he had become acquainted with and was "acquainted with the tools and implements used by burglars in their burglarious doings," and was acquainted with "what is known as burglar tools and implements."

The question of a witness' qualifications to testify as an expert is primarily for the determination of the trial court, whose decision will be set aside only where there is a manifest abuse of discretion or no evidence to support the decision.[7] There was evidence to support the trial court's decision on this question and there was no abuse of discretion.

The last alleged error urged under motion for new trial is the action of the trial court in admitting in evidence Exhibit 15, which was a duly authenticated copy of a penitentiary mittimus of the Criminal Court of Cook County, Illinois, in a cause entitled *People of the State of Illinois* v. *Edward Daugherty,* wherein the defendant was sentenced to the penitentiary of the state at Joliet, Illinois, for sixteen years,

---

*Note 7.* "It is for the court to determine whether the witness is or is not qualified to testify as an expert, and the question as to his competency is exclusively for the court. . . .

"Some of the cases go very far upon this point, for some of them hold that the decision of the trial court is conclusive, but we think the cases which hold that where there is no evidence at all tending to prove that the witness is qualified to testify as an expert, or where there is a palpable abuse of discretion, the ruling of the trial court is subject to review, are supported by the better reason." *The City of Fort Wayne* v. *Coombs* (1886), 107 Ind. 75, 7 N. E. 743.

"In most jurisdictions it is repeatedly declared that the decision upon the experimental qualifications of witnesses should be left to the determination of the trial court." Wigmore on Evidence, Vol. 1, §561.

upon a conviction in said criminal court for the offense of murder. It was objected (1) that such exhibit did not show that the crime for which appellant was alleged to have been previously convicted was a felony in Illinois and, (2) that such record should not have been admitted until the state had well established that appellant and the person mentioned in the record were one and the same.

Our statute (§2027, Burns, etc., 1926, §9-101, Burns, etc., 1933, §2091, Baldwin's 1934, Acts 1905, ch. 169, p. 584, §1) provides that "all crimes and public offenses which may be punished with death or imprisonment in the state prison shall be denominated felonies." The word felony, as used in the statute under which appellant was charged will be interpreted in the light of that definition; and where the previous offense relied upon was committed in another jurisdiction, proof that the punishment, prescribed by the law of that jurisdiction consisted of death or imprisonment in the state prison of that jurisdiction will sustain the allegation that the offense relied upon was a felony. *Kelley* v. *State* (1933), 204 Ind. 612, 185 N. E. 453, 458. Proof that the punishment actually imposed for the offense committed in another jurisdiction did in fact consist of imprisonment in the state prison of that jurisdiction will also sustain the allegation that the offense relied upon was a felony.

Evidence tending to establish the identity of appellant as the person referred to in Exhibit 15 was to be found in appellant's admission testified to by several witnesses in which his statements concerning a former conviction corresponded with the facts appearing in Exhibit 15 as to (a) the nature of the offense, (b) the length of sentence imposed, and (c) the place of imprisonment. In addition, such evidence was to be found in the testimony of the police officer who stated that he had arrested appellant for the previous offense and knew

of his conviction upon that charge. Appellant was sufficiently identified as the person referred to in the exhibit to permit its introduction in evidence.

The trial court did not err in overruling appellant's motion for new trial.

Judgment affirmed.