JAMES JOHNSON *v.* STATE OF INDIANA.

[No. 371S64. Filed November 19, 1971. Rehearing denied January 12, 1972.]

*Frank E. Spencer,* of Indianapolis, for appellant.

*Theodore L. Sendak,* Attorney General, *William F. Thompson,* Assistant Attorney General, for appellee.

ARTERBURN, C. J.—On June 4, 1970, appellant was indicted for First Degree Murder and on June 10, 1970, was arraigned and pleaded not guilty. Appellant waived trial by jury. On November 5, 1970, appellant was found guilty of second degree murder in Marion Criminal Court. The court entered the following judgment:

> "The Court finds your are [sic] [age] to be forty-five [45] years of age and sentences you to the Indiana State Prison for a term of life imprisonment."

On March 15, 1971, appellant filed a Petition to File a Belated Amended Motion to Correct Errors, pursuant to Post-Conviction Remedy Rule 2. The petition was granted and the motion overruled on the same day. This appeal followed.

Appellant has not raised any question regarding the sufficiency of the evidence.

Appellant's sole claim is that he was denied his constitutional right "to meet the witnesses face to face", the right of an accused in a criminal prosecution, as provided for in the Constitution of the State of Indiana, Article 1, sec. 13, which reads as follows:

"Rights of accused—In all criminal prosecutions, the accused shall have the right to a public trial, by an impartial jury, in the county in which the offense shall have been committed; to be heard by himself and counsel; to demand the nature and cause of the accusation against him, and to have a copy thereof; *to meet the witnesses face to face,* and to have compulsory process for obtaining witnesses in his favor".

Appellant bases his urging upon the trial court's sustaining of certain objections made by the prosecution to questions asked by appellant's counsel on cross-examination of certain state's witnesses. In chronological order the questions, objections, and trial court's ruling, are as follows:

(1) On cross-examination of the physician who performed an autopsy on the victim, appellant's counsel asked questions regarding the condition of the victim before his death. In this regard the relevant portion of the record is as follows:

Q. "What was the blood alcohol contents of the deceased"?

&ast; &ast; &ast;

A. "It was point two five".

&ast; &ast; &ast;

Q. "That would indicate that the deceased was drunk, wouldn't it"?

 *MR. WILSON:* "Objection".
 *THE COURT:* "That will be sustained".

Q. "What would it indicate then, Doctor, in terms of, medical terms, with reference to the presence of a point two five 0 alcoholic contents in the system, what would that indicate to you"?

A. "It would indicate acute ethanol intoxication".

&ast; &ast; &ast;

A. "That the individual was under the influence of alcohol".

Appellant contends there was error in the sustaining of the State's objection to the defense's question, as to whether or not the victim was "drunk", although in fact the record shows the doctor did testify that the victim was "under the influence of alcohol". We need not go into the question of whether or not a medical expert and physician can testify that a man was "drunk", in common terminology, since the witness did answer the question in substance and the defendant was not prejudiced by the sustaining of the objection. No prejudicial error is shown in this cause. *Fletcher* v. *State* (1961), 241 Ind. 409, 172 N. E. 2d 853, 859. We also point out that appellant's trial was a "court trial" before a trial judge of much experience who no doubt understood exactly the significance of the physician's testimony, that the victim's blood contained, by weight, .25% alcohol. Under these circumstances there was no error committed by the trial court.

(2) There was uncontradicted evidence that appellant shot the deceased victim. On cross-examination, State's witness, William Batts, who was standing next to appellant when he shot the victim, was asked,

Q. "As a matter of fact, Johnson was attemping to frighten Turner (the victim), wasn't he, scare him, wasn't he"?

To this question the prosecuting attorney objected, which objection was sustained by the court. There is no merit to appellant's urging that the court erred in sustaining the prosecutor's objection. The question called for a conclusion from the witness and was properly objectionable. In *Tait* v. *State* (1963), 244 Ind. 35, 188 N. E. 2d 537, this court stated:

"The offer to prove called for a conclusion on the part of the witness. Only facts themselves may be stated, and not the conclusion on the part of the person making the offer to prove." [244 Ind. at 52]

(3) Later during the continued cross-examination of the same witness, William Batts, he testified that appellant had left and returned to the place where he, the appellant, the victim, and others had been having a party. Appellant's counsel then asked the witness how long the appellant was gone. Regarding this questioning the record discloses the following:

Q. "How long was Johnson gone when he left?

A. "I don't know exactly.

Q. "Less than a minute.

A. "Really I didn't see him when he left out the door.

Q. "As a matter of fact Johnson never did leave the place, did he?

A. "He left.

Q. "When?

A. "I don't know when he left.

Q. "How long was he gone?

A. "I don't know that either cause I don't know when he left.

Q. "You don't even know even if he did leave, do you?

A. "All I know he was coming in the door when we were going out.

Q. "Johnson was coming in the door?

A. "Yes.

Q. "How much time elapsed from the last time you saw Johnson in the room there until he came to the door, in terms of minutes?

A. "I don't exactly know.

Q. "Beg pardon?

A. "I don't exactly know.

Q. "Five minutes?

*MR. WILSON:* Objection. He stated that he doesn't know.

*THE COURT:* Sustained.

Q. "Well, was it five hours?

*MR. WILSON:* Objection.

*THE COURT:* That will be sustained."

We recognize the general rule regarding cross-examination of witnesses that "great latitude is allowed in questioning a witness", *Mark* v. *City of Indianapolis, etc.* (1969), 247 ██ Ind. 511, 219 N. E. 2d 434, however, we also recognize that this rule is subject to the exercise of a paramount rule that the trial court has wide latitude in ruling on matters concerning the extent of cross-examination of a witness, and such discretion will not be interfered with unless an abuse of discretion is shown. *Storie* v. *State* (1970), 254 Ind. 301, 258 N. E. 2d 849; *Payne* v. *State* (1970), 254 Ind. 593, 257 N. E. 2d 818. In the instant case the appellant has failed to schow any abuse of discretion by the trial court, therefore, his urging is without merit. Further, while in some instances it is permissible for the trial court to allow repititious questions to be asked where such has been previously answered, *Shuemak* v. *State* (1970), 254 Ind. 117, 258 N. E. 2d 158, the general rule is to the contrary 30 I.L.E., *Witnesses* sec. 128, p. 129. In the instant case the record shows that the witness stated that he did not know when the appellant left the party, that therefore, he could not have known how long he was gone. He stated several times prior to the court's ruling on the objecton that "I don't exactly know". Under these circumstances, no abuse of the trial court's discretion is shown.

Judgment of the trial court is affirmed.

All judges concur.

NOTE.—Reported in 275 N. E. 2d 14.