POSEY COUNTY, Board of Posey County Commissioners and Marcellus Deig, as Posey County Highway Superintendent, Defendants-Appellants,

v.

Victor L. CHAMNESS, Vern L. Chamness, and Faye Chamness, Plaintiffs-Appellees.

No. 1–981A267.

Court of Appeals of Indiana, First District.

Aug. 24, 1982.

James M. Buthod, Mark W. Rietman, Buthod, Longest, Buthod & Rietman, Evansville, William H. Bender, Poseyville, for defendants-appellants.

Glenn A. Grampp, James D. Lopp, Sr., James D. Lopp, Jr., Evansville, for plaintiffs-appellees.

NEAL, Judge.

## STATEMENT OF THE CASE

Defendants-appellants Posey County, Board of Posey County Commissioners and Marcellus Deig, as Posey County Highway Superintendent (Posey) appeal a judgment entered in the Vanderburgh Circuit Court upon a jury trial in favor of plaintiffs-appellees Victor L. Chamness (Chamness), Vern L. Chamness, and Faye Chamness (parents) in a personal injury action for negligent maintenance of a public thoroughfare. The jury returned a verdict awarding $225,000 to Chamness and $5,000 to his parents.

We affirm.

## STATEMENT OF THE FACTS

On Saturday, May 26, 1979, at approximately 10:00 p.m., Chamness, a boy of 14 years of age, travelled from Cynthiana, in Posey County, to Evansville with five other friends to see a movie. All six persons travelled together to Evansville in a 1965 Plymouth Valiant automobile, and, after they watched the movie and made several stops on their way back home, at approximately 3:00 a. m. on May 27, 1979, the automobile, driven by one Michael Money, was involved in a one-car accident on Winery Road near S.R. 66 in Posey County.

At no time on the evening of the accident did Chamness drive the automobile. Prior to the accident, neither Money nor Chamness had ever been on Winery Road. The evidence discloses that on Winery Road there were no posted speed limit signs, signs indicating the existence of a curve, reduce speed signs, or warning lights. Money testified that he was driving 40-45 m. p. h. just before the accident.

Winery Road recently had been partially resurfaced on the stretch of road before the subject curve and the repaved section was in excellent condition. However, the resurfacing ended just before the road curved 90 degrees and the old pavement was broken, filled with gravel and had potholes. Posey County Sheriff Deputy Jerry Winkleman testified that the speed limit was not posted, and therefore, 55 m. p. h. was the permissible speed. Investigating officer Jerry Winkleman also testified that a road defect existed at the time of the accident, that being the absence of a curve sign to warn approaching motorists of the existence of the subject curve.

Failing to negotiate the curve, the automobile went off the road, glanced a tree and struck the embankment beside the road. As a result of the accident, all six occupants of the automobile were injured, two fatally. Chamness suffered a severe blow to the head and was rendered totally blind in his left eye. He suffered emotional problems as a result of permanently losing vision in his eye and from seeing his close friends killed in the same crash. Chamness' relationship with his parents deteriorated

due to his physical injuries and emotional problems caused by the accident.

On September 12, 1979, Chamness and his parents filed a lawsuit against Posey alleging that Posey negligently maintained, repaired and failed to keep in a safe and usable condition Winery Road. A trial by jury commenced on May 25, 1981, and on May 27, 1981, the jury returned a verdict, awarding Chamness $225,000 and his parents $5,000. The trial court entered judgment upon the verdicts in favor of Chamness and his parents.

## ISSUES

Posey presents five issues for review and we adopt Chamness' restatement of the issues as follows:

I. Whether the trial court erred in excluding the testimony of Jerry Winkleman, upon cross examination, as to the speed of the automobile in which the appellee was a passenger at the moment of impact;

II. Whether the trial court erred in excluding the testimony of Michael Money as to whether driving 55 m. p. h. would be too fast to be careful under the circumstances to negotiate the curve where the collision occurred;

III. Whether the trial court erred in excluding the testimony concerning prior convictions of the witness, Michael Money;

IV. Whether the trial court abused its discretion by questioning the defense counsel's trial tactics in the presence of the jury and intervening in the advocacy process on several occasions, thus prejudicing the jury against the appellants; and

V. Whether the verdicts returned by the jury were excessive, contrary to the evidence and the result of passion, prejudice and partiality.

## DISCUSSION AND DECISION

*Issues I and II. Improper exclusion of testimony*

Posey argues that the trial court abused its discretion in sustaining Chamness' objection to Deputy Winkleman's testifying on cross examination as to the rate of speed the automobile was travelling at the moment of impact. Winkleman was called to testify as Chamness' witness to substantiate the allegations of negligence charged against Posey. It is the contention of Posey that it had a right to cross examine Winkleman on all phases of the accident since Chamness, on direct examination, opened up the general subject of speed and the occurrence of the accident in question. In support of its contention, Posey cites *The Louisville, New Albany and Chicago Railway Company v. Wood*, (1887) 113 Ind. 544, 14 N.E. 572; and *Northern Indiana Public Service Co. v. Otis*, (1969) 145 Ind.App. 159, 250 N.E.2d 378, for the propositions that where direct examination of a witness opens on a general subject, cross examination may go into any and all phases of that subject, and the scope of cross examination of an expert generally is broader than that permitted of other witnesses.

Our Supreme Court, in *Reid v. State*, (1978) 267 Ind. 555, 560–61, 372 N.E.2d 1149, discussed both the qualifications of a witness to testify as an expert and the standard of review of the trial court's ruling thereon as follows:

"There can be no hard and fast rule as to the quantum of knowledge required to qualify a witness as an expert in a given field. It has been said that he must be shown to be competent upon the subject concerning which he is to testify. *Pittsburgh, etc. R. Co. v. Nicholas*, (1906) 165 Ind. 679, 76 N.E. 522; *City of Bloomington et al. v. Holt, Admr.*, (1977) Ind.App., 361 N.E.2d 1211, 1220. The determination of whether a witness is qualified to give an opinion is within the trial court's discretion. No precise knowledge is required, if the witness shows an acquaintance with the subject such as to qualify him to give an opinion. 'The witness must have sufficient skill, knowledge or experience in that area to make it likely that his informed inference will aid the

jury properly to determine such matters.' Seidman, The Law of Evidence in Indiana, p. 21 and cases there cited. The extent of the witness' knowledge, however, affects the weight of his testimony, which is a matter for the jury to determine. *City of Bloomington, etc.; supra.*

The qualification of an expert witness is generally left to the trial court's sound discretion, and the trial court's determination will not be set aside unless there is clear error, often termed an abuse of discretion. *Niehaus, supra, Tyler v. State,* (1968) 250 Ind. 419, 236 N.E.2d 815; *Dougherty v. State,* (1934) 206 Ind. 678, 191 N.E. 84. The requirement that a witness be qualified before being permitted to testify as such is predicated upon the witness' offer of an opinion that is based upon facts that the average juror is incapable of interpreting for himself. *Stroud v. State,* (1971) 257 Ind. 204, 273 N.E.2d 842, vacated on other grounds 413 U.S. 911, 93 S.Ct. 3038, 37 L.Ed.2d 1025; *Keifer v. State,* (1927) 199 Ind. 10, 154 N.E. 870.

The record discloses that Winkleman was called as a witness by Chamness to testify on facts concerning his report of the accident since he was the investigating officer. Chamness never qualified Winkleman as an expert witness and only questioned him about facts he observed at the accident scene or of which he had knowledge from past experience. On direct examination, Winkleman was asked from his experience whether it was possible for the automobile to negotiate the curve, where the accident occurred, at 55 m.p.h., the unposted but permissible speed limit. Winkleman testified that he was familiar with the road and its configuration, and therefore could give an opinion as to driving a certain speed on that road based on his own personal experience.

On cross examination, Posey began its questioning of Winkleman on factual matters concerning the accident, but then inquired of his opinion about the rate of speed the automobile actually was travelling at the moment of impact. Chamness objected to the question since no proper foundation had been laid to qualify Winkleman as an expert capable of formulating such an opinion. The trial court sustained the objection, which ruling Posey contends was an abuse of its discretion.

■ The burden of establishing the qualifications of a witness in order to permit him to testify as an expert is upon the party seeking to have such evidence admitted. *McCraney v. Kuechenberg,* (1969) 144 Ind.App. 629, 248 N.E.2d 171. It is not the burden of the adversary to prove that said witness is not qualified. *McCraney, supra.* Whether a witness is qualified to testify as an expert is for the determination of the trial court and its decision will stand barring a showing of manifest abuse of discretion. *City of Indianapolis v. Robinson,* (1981) Ind.App., 427 N.E.2d 902; *McCraney, supra.* However, the trial court has wide latitude in ruling on matters concerning the extent of cross examination of a witness, and such discretion will not be interfered with unless an abuse of discretion is shown. *Johnson v. State,* (1971) 257 Ind. 389, 275 N.E.2d 14.

■ The mere fact that a witness is a police officer does not qualify him to testify as an expert upon the speeds of motor vehicles. *McCraney, supra.* In *McClure v. Austin,* (1972) 152 Ind.App. 398, 283 N.E.2d 783, the court held that the refusal to permit a retired state trooper to give an opinion as to the speed of a vehicle when the accident occurred was not an abuse of discretion even though the officer had investigated some 3,000 accidents during his 30-year tenure as a police officer, had attended certain traffic schools, and was qualified to testify as an expert accident reconstructionist.

■ In the case at bar, on leave to ask Winkleman some preliminary questions regarding his training and qualifications in accident reconstruction, Winkleman admitted that he had not determined several important factors in arriving at an opinion of the vehicle's rate of speed prior to impact. Winkleman had not considered the weight

and load of the automobile, the degree of inclination of the road and the drag factor of the roadway. As the court in *McCraney, supra*, 144 Ind.App. at 635, 248 N.E.2d 171, stated:

"Even if the officer were competent to render an opinion as to speed such opinion would not be admissible if he failed to take into account every factor essential to the formulation of that opinion. The specific question posed to the officer here, even when coupled with his prior testimony, lacked the requisite physical elements or foundation to allow *any* opinion, expert or otherwise concerning speed."

Here, the trial court did not abuse its discretion in not permitting Winkleman to answer the question since the evidence shows that Posey failed to properly establish the qualification of Winkleman as an expert witness.[1]

■ Posey next argues that the trial court abused its discretion in not permitting witness Michael Money, the driver of the vehicle at the time of the accident, to answer whether driving 55 m.p.h. would be too fast to be careful under the circumstances. The relevant testimony of Money is as follows:

"* * *

A. I think I was goin' at a reasonable rate of speed.

Q. If the evidence shows that there was testimony that you were going possibly 55 miles an hour, is that a reasonable rate of speed?

A. Like I told you, I looked at the speedometer. All I can tell you is what I seen.

Q. I'm not asking you that. I'm asking you if 55 miles an hour in your estimation is a reasonable, careful rate of speed on a country road that you'd never been on before?

A. I wouldn't say it would be that careful.

Q. I'm sorry I didn't understand you.

A. I said I don't believe it would be that careful, but uh like I told you, I don't . . . I was doin' 40 to 45 when I looked at the speedometer.

Q. Okay. 55 would be too fast to be careful, then?

A. I'm not sayin' that.

Q. Give me yes or no—55 would be too fast to be careful under the circumstances?

MR. GRAMPP: Your Honor, I'm gonna object to this . . .

BY THE COURT: I will sustain the objection. The reason—it's a jury question."

Posey contends the trial court misunderstood the law when it excluded the question and cites *Rieth-Riley Construction Company, Inc. v. McCarrell*, (1975) 163 Ind.App. 613, 325 N.E.2d 844, for the proposition that the *per se* exclusion of opinion testimony because it embraces an ultimate issue to be decided by the trier of fact has been abrogated. In *McCarrell*, the court discussed the question of admissibility of lay witness opinion testimony on ultimate fact issues and stated:

"This strict approach, in our opinion, is unduly restrictive in that it would operate so as to deprive the trier of fact of useful information in situations where opinion testimony on an ultimate fact in issue would be the most desirable or perhaps the only vehicle for relating a particular happening or fact. Moreover, the strict approach of prohibiting the 'invasion of the province of the jury' by opinion testimony on ultimate factual issues is subject to misapplication in that it is easily confused with the generally accepted

---

1. As Chamness reminds us in his brief, the speed of the vehicle would only be relevant if Posey alleged contributory negligence of the driver. However, Chamness, the plaintiff in this action, was only a passenger in the vehicle involved in the collision. Even if the driver had been negligent in the manner he operated the vehicle prior to the collision, that negligence could not be imputed to a passive occupant who exerts no control over the driver. *State, Indiana State Highway Commission v. Speidel*, (1979) Ind.App., 392 N.E.2d 1172; *Leuck v. Goetz*, (1972) 151 Ind.App. 528, 280 N.E.2d 847; *New York Central Railroad Co. v. Sarich*, (1962) 133 Ind.App. 516, 180 N.E.2d 388.

rule that expert opinion should not be heard on commonplace matters.

Through recognition of these shortcomings of the strict exclusionary approach, the majority of state courts have now adopted the philosophy that provided all other admissibility requirements are met, an opinion upon an ultimate fact may be given....

\* \* \* \* \* \*

Thus the *per se* exclusion rule has been abrogated, and the trial judge at his discretion, may in an appropriate case, permit such evidence. In exercising his discretion, the trial judge should consider the nature of the issue and the offered opinion in light of all attendant circumstances of the particular case. This court will review such an exercise in judicial discretion only for an abuse thereof."

163 Ind.App. at 626–27, 325 N.E.2d 844.

As Chamness states, Money answered Posey's question twice, stating: "I wouldn't say it would be that careful" driving 55 m.p.h. on the road where the accident occurred. The question was answered by the witness and even if the trial court did exclude the answer *McCarrell* clearly leaves the matter to the trial court's discretion and, in the instant case, the trial court has not abused its discretion.

*Issue III. Impeachment of witness on prior convictions*

Posey next contends the trial court abused its discretion in not permitting Posey to impeach Money regarding his prior convictions for crimes relating to dishonesty and false statement, citing *Ashton v. Anderson*, (1972) 258 Ind. 51, 279 N.E.2d 210. Relevant portions of the record are as follows:

"Q. Have you ever been convicted of a crime?

A. Yes.

Q. Ever been convicted of theft?

A. Yes.

Q. Ever been convicted of Class C Burglary?

A. Yes.

Q. Have those convictions been within the last—either one of those convictions be within the last two years?

A. Yes.

Q. With both of them being within the last five years?

A. Yes.

BY THE COURT: Okay, if you're gonna impeach, let's impeach properly. Date ... time ... court of the conviction. Otherwise, it is an improper question.

Q. Would you give me the date and time ...

BY THE COURT: You ask the date and time. It's up to you. Not him.

Q. Well, I prefer to just leave it as it is, Your Honor.

MR. GRAMPP: Your Honor, I believe the question ...

Q. *I will just withdraw the question.*

BY THE COURT: You ask the date, the time and the court. I hope you know how to impeach.

Q. That is correct, Your Honor, but ...

BY THE COURT: That's the way you impeach and the only way you're going to impeach in this court.

Q. My initial question ...

BY THE COURT: Or the way you impeach in the State of Indiana.

Q. But was not my initial question ...

BY THE COURT: Make a motion to strike and I will sustain the motion to strike. Strike all his testimony concerning what crimes he might have committed.

MR. GRAMPP: Your Honor, I so move and ask for admonishing the jury, please.

BY THE COURT: I admonish the jury not to consider that in determining uh whether or not this plaintiff recovers in this case.

MR. MERRILL: If Your Honor will give me a moment.

Q. *Were you convicted in 1980 of a crime of burglary, a Class C, in the month of June in Vanderburgh County?*

A. Yes, I was.

Q. Were you convicted in Vanderburgh County in 1977 for theft?

BY THE COURT: What court? And what date?

MR. MERRILL: 1977.

BY THE COURT: What date?

MR. MERRILL: I do not have the date.

BY THE COURT: Well, you can get the date.

MR. MERRILL: *I do not have it, Your Honor. I have 1977.*

BY THE COURT: Then I will sustain the objection. You can get the date." (Our emphasis.)

A witness' credibility may be attacked by questioning him about his convictions for treason, murder, rape, arson, burglary, robbery, kidnapping, forgery, perjury, or crimes involving dishonesty or false statement. *Roseberry v. State,* (1980) Ind., 402 N.E.2d 1248. It is well recognized that a witness may be required on cross examination to answer as to prior convictions for the purpose of impeaching his credibility. *Ashton, supra.*

After the trial court instructed Posey how to properly impeach a witness, Posey voluntarily withdrew the question and the trial court admonished the jury. Subsequently, as the above-quoted portions of the record reveal, Posey successfully impeached Money with a prior burglary conviction. The trial court, however, refused to allow Posey to question Money on an alleged prior theft conviction because counsel could not supply the exact date of said conviction. Citing *Fletcher v. State,* (1976) 264 Ind. 132, 340 N.E.2d 771, Posey correctly argues that proof of a prior theft conviction is admissible for impeachment purposes as a crime involving dishonesty or false statement. We also agree that there is no established or set method of impeaching a witness. Indiana case law does not prescribe a certain degree of specificity for impeaching a witness with his prior convictions, as the trial court here required. *See,*

*Cox v. State,* (1981) Ind., 419 N.E.2d 1279 (where witness was simply asked whether she had ever been arrested and convicted of a crime); *Garner v. State,* (1980) Ind., 413 N.E.2d 584 (when prosecutor asked witness whether he had ever been convicted of second degree burglary); and *Geisleman v. State,* (1980) Ind., 410 N.E.2d 1293 (where the witness was asked whether he had been convicted of larceny in late 1978 or 1979).

While we agree that the trial court should not have refused the impeaching questions to Money, Posey did succeed in impeaching Money with his prior burglary conviction. Furthermore, in response to the trial court's insistence that counsel obtain the exact date of the other prior conviction, Posey, without objecting to such request, merely stated, "I do not have it, Your Honor. I have 1977." The trial court has considerable latitude in the admission or rejection of evidence and it is only when an error by the judge relates to a material matter, or is of such character as to substantially affect the rights of the parties that such an error justifies reversal. *School City of Gary v. Claudio,* (1980) Ind.App., 413 N.E.2d 628; Ind. Rules of Procedure, Trial Rule 61.

In the case at bar, it was harmless error since Posey successfully impeached Money with a prior burglary conviction and failed to object [2] to the trial court's insistence on a more specific date for the prior theft conviction.

*Issue IV. Trial court questioning witnesses*

Posey contends the trial court prejudiced the jury against Posey in criticizing the impeachment method used by counsel during cross examination of Money. While the trial court did insist on a specific method in laying a foundation to impeach a witness, we do not agree, as Posey contends, that the trial court prejudicially questioned counsel's legal ability in the presence of the jury by instructing counsel how to properly impeach in its court. Mere assertions of error unsupported by cogent

---

**2.** Here, Posey did not even request a recess to obtain the hearsay information which, presum-      ably, was readily available.

argument or authority preserve nothing for appeal. *Tapp v. State,* (1980) Ind.App., 406 N.E.2d 296. Posey cites no authority and presents no cogent argument for the contention and therefore it is deemed waived pursuant to Ind.Rules of Procedure, Appellate Rule 8.3A(7).

▮ Additionally, Posey argues that the trial court intervened in the questioning of witnesses during cross examination. The trial court may ask proper questions of a witness to develop the truth or present facts overlooked by the parties. *Thomas v. State,* (1967) 249 Ind. 271, 230 N.E.2d 303; *Edmonds v. State,* (1966) 247 Ind. 332, 215 N.E.2d 547. The trial court may direct questions to a witness to aid in the fact-finding process as long as it is done in an impartial manner and the defendant is not prejudiced. *Atkinson' v. State,* (1979) Ind. App., 391 N.E.2d 1170. However, remarks made by a judge in the presence of the jury during the progress of a trial, if material and improper, constitute prejudicial error. *Brunker v. Cummins,* (1892) 133 Ind. 443, 32 N.E. 732.

▮ After carefully reading each portion of the transcript cited by Posey, we conclude that, in each instance, the trial court questioned the witness in a proper manner and for purposes of clarification only. Posey was not prejudiced by the trial court's questioning witnesses. Furthermore, as Chamness states in his brief, Posey failed to object to these alleged errors at trial. When a trial judge conducts a separate interrogation of a witness so that such could be error, such error is deemed waived unless an objection is interposed by the complaining party. *Marposon et' ux. v. State,* (1972) 259 Ind. 426, 287 N.E.2d 857. A party may not sit idly by and make no objections to matters he might consider prejudicial, awaiting the outcome of a trial, and thereafter raise such question for the first time. *Thomas, supra.* Here, Posey failed to object and any alleged error is deemed waived.

*Issue V. Jury award excessive*

Finally, Posey argues that the verdict of the jury awarding Chamness $225,000 and his parents $5,000 was "so outrageously great as to indicate, at first blush, prejudice, partiality, corruption or other improper motive on the part of the jury."

▮ In Indiana, the amount of the damage recovery is largely within the discretion of the trier of fact, and absent a showing of prejudice, partiality, or other improper motive, the Court of Appeals will not disturb the damage award on grounds of excessiveness unless the amount is so outrageous as to impress the court at first blush with its enormity. *State v. Bouras,* (1981) Ind.App., 423 N.E.2d 741; *Moore v. Moriarty,* (1981) Ind.App., 415 N.E.2d 779.

Posey asserts that the verdict is clearly excessive in light of the small amount of special damages: $324 in hospital and doctor bills and $581 for treatment by a clinical psychologist. The uncontroverted evidence shows that on the date of the accident, Chamness was 14 years old and prior to the collision had sight in both eyes. As a result of the accident, Chamness received a blow to the left side of his head and a cut by his left eye which required stitches to close. Chamness' good friend, Tommy Mills, a passenger in the accident vehicle, was killed as a result of the collision. Dr. Elizabeth Sowa, a medical specialist, testified that as a result of the trauma to the left side of Chamness' head, he suffered from optic atrophy or total blindness in the left eye. Chamness permanently lost the vision in his left eye. At the time of trial, Chamness was 16 years old and had a life expectancy of 53.89 years. He testified he had difficulty performing his job because of the loss of sight. Chamness developed emotional problems as a result of the accident and was referred to Dr. John Claire, a clinical psychologist, who testified that Chamness would need therapy at present and in the future, costing between $2,500 and $3,500. Chamness had incurred nearly $1,000 of medical expenses due to the accident. His parents testified that as a result of the accident, Chamness had become withdrawn,

his personality had changed and the close relationship they had shared with their son prior to the accident had deteriorated.

The trier of fact may infer mental and physical suffering which would naturally flow from a personal injury proved. *New York, Chicago and St. Louis Railroad Company v. Henderson*, (1957) 237 Ind. 456, 146 N.E.2d 531. The jury may use human experience in determining the anguish, anxiety and other suffering both physical and mental that naturally flow from a physical injury disfigurement or resulting incapacity caused to a person. *Henderson, supra.* The determination of damages is a jury question, and on appeal, we may look only to the evidence and inferences therefrom which support the damages award. *Lapsley v. Jackson*, (1979) Ind.App., 384 N.E.2d 1136. To determine the amount of damages for personal injuries arising from an automobile collision, the jury may consider and determine from the evidence the character of the injuries, medical expense, the claimant's physical and mental pain, his suffering caused by and arising from his injuries, and any probable future pain and suffering and physical infirmities or disabilities resulting from the injuries. *Cauldwell, Inc. v. Patterson*, (1961) 133 Ind.App. 138, 177 N.E.2d 490.

As Chamness argues, in *Bouras, supra,* the court held that a damages award of $474,712 was not excessive even though special damages were stipulated at $5,280.74. In *Bouras*, the court said:

"The parties stipulated to the amount of burial and funeral expenses at $5,280.74. No other special damages for Mrs. Gianakis were stipulated or sought. The jury was instructed properly that recovery could be awarded for intangibles, such as loss of a mother's services, counseling, guidance, love and affection. The surviving son testified concerning his mother's love and care. No evidence was introduced as to the worth of these services and intangible losses. However, since there was evidence of the loss and since the jury was instructed without objection that recovery could be made for the loss, the only question is whether the jury's award was caused by passion, prejudice or partiality. We are unpersuaded that the amount of damages alone in this case are so outrageous as to be indicative of prejudice. We cannot say as a matter of law the loss of a mother is worth less than the jury's award, and where there is credible evidence to sustain the jury's discretion, we will not find that discretion abused."

423 N.E.2d at 746–47.

In the case at bar, there were a number of intangibles which the trier of fact could consider to determine damages, such as the effect of total loss of sight in one eye, the life expectancy of the injured party, and the emotional problems resulting from the collision. There is credible evidence to sustain the jury's award.

Judgment affirmed.

RATLIFF, P. J., and ROBERTSON, J., concur.