**TERRE HAUTE FIRST NATIONAL BANK, as Guardian of the Estate of Thomas Soules, a minor, Plaintiff-Appellant,**

v.

**Walter STEWART, Defendant-Appellee.**

**No. 1–1282A351.**

Court of Appeals of Indiana,
First District.

Oct. 19, 1983.

Rehearing Denied Nov. 29, 1983.

---

Buena Chaney, Mann, Chaney, Johnson & Goodwin, Terre Haute, for plaintiff-appellant.

William W. Drummy, Patrick, Gabbert, Wilkinson, Goeller & Modesitt, Terre Haute, for defendant-appellee.

ROBERTSON, Presiding Judge.

The plaintiff-appellant, Terre Haute First National Bank, as guardian of the minor Thomas Soules (Soules), is appealing a judgment in favor of the defendant-appellee, Walter Stewart.

Although we find error, we determine it to be harmless and accordingly affirm.[1]

This cause of action was brought as a result of Soules sustaining injuries when he was struck by an automobile driven by Stewart. A review of the basic facts show that Soules was operating a motorized bicycle (moped) southbound on or along the side of Clinton Road (U.S. Highway 41) north of Terre Haute in Vigo County, Indiana. Stewart, also southbound, drew alongside Soules and at that time, Soules veered left at about a forty-five degree angle into the path of Stewart's automobile. Soules, then 13 years old, was struck by the front of Stewart's automobile and sustained serious injuries.

### ISSUE I

One of Soules's allegations of Stewart's negligence was that Stewart had an impaired reaction time because of injuries sustained in prior automobile accidents, and, therefore, was incapable of driving his automobile in a reasonably safe manner. This point was being explored during the taking of the deposition of Stewart's expert medical witness. During cross-examination the following colloquy occurred:

Q. What we are talking about in this case, Dr. Sison, is not a second but a fraction of a second. The evidence will be that the contact was made with the left front of the Thunderbird automo-

---

1. Indiana Rules of Trial Procedure, T.R. 61, defines harmless error:

No error in either the admission or the exclusion of evidence and no error or defect in any ruling or order in anything done or omitted by the court or by any of the parties is ground for granting relief under a motion to correct errors or for setting aside a verdict or for reversal on appeal, unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.

bile, involving only the frame around the license plate. No other scratches, no other damage to the Thunderbird at all, and the only damage to the moped was to the rear fender. A thin fender approximately two inches wide was bent to the side. Apparently, the Thunderbird was almost to a dead stop at the time of impact. So we're talking about the fine, close reaction time of the driver of the Thunderbird, the difference between his missing the boy and hitting the boy. Now a person, Doctor, in your judgment, that is wracked with pain of his cervical spine and back, who has complained of tremors in his hand, who has complained of the other things that we've been talking about here, could his reaction time have been slowed down that degree that made the difference between having the crash and not having the crash?

MR. DRUMMY: Just wait a second. I'll object to the form of the question, it's not couched in terms of reasonable medical certainty.

A. It's possible.

Q. Alright, in reasonable medical certainty it is possible, is that correct?

A. That's correct.

Notwithstanding the fact that the second question seems to have cured the purported deficiency, the trial court subsequently sustained the objection relying upon *Palace Bar, Inc. v. Fearnot,* (1978) 269 Ind. 405, 381 N.E.2d 858. *Palace Bar* held, in essence, that a doctor's testimony can only be considered evidence when it is stated that the conclusion given is based upon "reasonable medical certainty" that a fact is or is not true.

Soules argues that our supreme court backed away from that position in the case of *Noblesville Casting Division of T.R.W., Inc. v. Prince,* (1982) Ind., 438 N.E.2d 722, where it stated that no threshold level of certainty is required as a prerequisite of admissibility of an expert's opinion.

Bearing in mind that the question is one of admissibility, as opposed to the weight to be attached to such evidence, the following

from *Colaw v. Nicholson,* (1983) Ind.App., 450 N.E.2d 1023 at 1030 is pertinent:

> *Palace Bar* may have been modified in *Noblesville Casting Division of TRW, Inc. v. Prince,* (1982) Ind., 438 N.E.2d 722 . . . *Noblesville Casting* held that expert medical opinion couched in terms less than that of a reasonable degree of medical certainty; such as "possible", "probable," or "reasonably certain," are admissible and do have probative value. However, such medical testimony standing alone, unsupported by other evidence, is not sufficient to support a verdict, as was stated in *Palace Bar.* It is for the jury to determine the weight to be accorded the testimony.

Justice Pivarnik, who wrote the opinion in *Palace Bar,* concurred only in the result reached in *Noblesville Casting.* He dissented on the conclusion reached by Justice Hunter that expert opinion based upon "possibilities" is probative evidence. Justice Given concurs in Justice Pivarnik's opinion; Justice Prentice concurred with Justice Hunter. Justice DeBruler did not participate. The precedential value of *Noblesville Casting* is thus in doubt.

■ Although the foregoing relates to the giving of an instruction, we believe that the principle is also applicable to this issue. We believe (until told the contrary) that it was error to exclude the evidence in question, because *Palace Bar* and *Noblesville Casting,* when read in conjunction, tend to indicate evidence of less than a reasonable medical certainty is admissible, even though evidence of a degree less than a reasonable medical certainty, standing alone, cannot support a verdict. It was error to exclude this evidence.

■ This is not to say, however, that the exclusion amounts to reversible error. Stewart argues that the evidence is cumulative and no reversible error attaches to its exclusion. *See: Ballard's Estate v. Ballard,* (1982) Ind.App., 434 N.E.2d 136. The record discloses other admitted testimony by this witness, as well as another physician, on the same theme. This, in our opinion, serves to cure any alleged deficiency.

## ISSUE 2

In much the same vein, Soules argues error in not giving his tendered instruction which reads:

Whether or not the normal faculties, either of perception, or physical ability, or of reaction time of a person involved in the occurrence were impaired, so that at the time and place in question he no longer had the capacity to exercise the care and caution that an ordinary prudent person would exercise under like or similar circumstances, is a proper question for the jury to consider. Such impairment is not an excuse for failure to act as a reasonably careful person would act.

Stewart counters with the argument that the subject matter was covered by other instructions.

The trial court gave an instruction generally defining what negligence on Stewart's part would be and an instruction defining reasonable care. Additionally, the court gave Soules tendered instruction which stated:

The Plaintiff has the burden of proving the following propositions:

*First Proposition:* That the Defendant was negligent in at least one of the following particulars:

 * * * * * *

3. That he was driving an automobile while he was physically incapable of controlling or driving his automobile, in a reasonable, safe manner, in the traffic conditions existing at the time and place, because of prior injuries to his spine, nerves and muscles.

■ When the above instructions are compared to the excluded instruction, we are of the opinion that the trial court was justified in the refusal for the reason that it was repetitive. *Coffman v. Austgen's Elec., Inc.,* (1982) Ind.App., 437 N.E.2d 1003.

## ISSUE 3

Soules commenced this action with a complaint containing two rhetorical paragraphs which was subsequently expanded into eleven allegations or contentions of negligence on the part of Stewart. At the conclusion of Soules's case in chief, Stewart moved for a judgment on the evidence. The trial court partially granted the motion by holding that there was not enough evidence for contentions 1, 3, and 8 to go to the jury; that contentions 4 and 8 were repetitious and duplicative; and, that contention 10 failed to allege a specific act or acts of negligence. As a result, contentions 1, 3, 4, 8, and 10 were withdrawn from the jury. Soules now argues that error existed in the ruling as it relates to contentions 4, 8, and 10. These contentions are:

4. He failed to take reasonable precautionary measures in driving his automobile in approaching and passing a child on or near the highway at that time and place.

8. He failed to reduce the speed of his automobile or take any precautionary action upon entering an area known by him to be a condensed residential area, with many children present near and using said highway, at a time of the day when traffic and use of the highway in that area was heavy, and at a time of the year when people and children were out of their homes pursuing recreation, physical activities, and moving about and across said highway, with vehicles, animals and afoot, and by failing to reasonably reduce the speed of his automobile he exposed said children and persons, including plaintiff, to unreasonable risk of being hit by his automobile.

10. He failed to exercise reasonable care under the conditions and circumstances then and there existing.

■ The office of a T.R. 50(A) motion is to test the sufficiency of the evidence. The standard to be used by the trial court on ruling on a motion for judgment on the evidence is that it should be denied unless there is a total absence of evidence or reasonable inference on at least one essential element of the plaintiff's case. When assessing the evidence for the purpose of a T.R. 50(A) motion, it should be viewed in a light most favorable to the party opposing

the motion. *Dibortolo v. Metropolitan School Dist. of Washington Twp.*, (1982) Ind.App., 440 N.E.2d 506.

 The trial court's ruling and the argument by Soules and Stewart on this issue are somewhat confusing. We perceive error in the trial court's ruling that certain contentions were repetitious, duplicative or not specific for the reason that a T.R. 50(A) motion is not to be gauged by these standards. However, Soules does not challenge that aspect of the trial court's ruling. As a result, we are only left with contention 8 being struck for an absence of evidence or reasonable inferences to be drawn therefrom. In arguing this specification of error, Soules fails, in large part, to direct us to evidence in the record given during his case in chief which would put this contention through the jury room door.[2] We will not search the record to reverse the trial court. *Jones v. City of Logansport*, (1982) Ind.App., 439 N.E.2d 666. The issue is waived.

### ISSUE 4

Soules argues that it was error to give Stewart's tendered instruction # 8, which reads:

Ladies and Gentlemen of the jury, I instruct you that Indiana long ago adopted the rule that in negligence cases, the standard of care applicable to a child engaged in the type of activity characteristically engaged in by children is that degree of care that would ordinarily be exercised by children of like age, knowledge, judgment and experience under similar circumstances.

However, in this case I instruct you as a matter of law that the plaintiff, Thomas Soules, was not involved in an activity characteristically engaged in by children at the time of the accident. Therefore, the plaintiff's ward, Thomas Soules, must be judged by the same standard of care required of an adult, specifically the degree of care exercised by a reasonable, prudent man in like or similar circumstances.

The authority cited for the instruction is *Bixenman v. Hall*, (1968) 251 Ind. 527, 242 N.E.2d 837.

Soules's objection to the instruction was that it did not correctly state the law, invades the province of the jury, and places an improper standard of care on Soules.

The applicable holding in *Bixenman, supra*, states that where a minor is charged with negligence or contributory negligence by reason of his violation of a safety statute while engaged in an activity not requiring adult qualifications, the standard of care to be applied to such minor is that degree of care which would ordinarily be exercised by a child of the same age, experience, intelligence, and educational level, except where the child is engaging in an activity for which adult qualifications are required. Soules argues that a 13-year old boy riding a bicycle with a "little motor" does not fit within the exception while Stewart posits that use of the moped is akin to the operation of a motorcycle and does fit the adult qualification exception.

 Soules quotes from various statutes to support his position that a motorized bicycle is not a motor vehicle which requires an adult standard of care. We believe the argument is not correct. Ind.Code 9–4–1–1 *et seq.* determines and defines the rules of the road in this state. Ind.Code 9–4–1–2 states that a motorized bicycle is not included in the definition of a motor vehicle, however, it is a vehicle. Ind.Code 9–4–1–22 plainly states that the rules of the road are applicable to *vehicles* using the highways, streets and roads. (Our emphasis). The use of a motorized vehicle (statutory definition notwithstanding) on a highway by Soules, in our opinion, clearly places him into the adult standard of care contemplated in *Bixenman, supra*. *See: Davis v. Waterman*, (1982) Miss., 420 So.2d 1063 (thirteen year old motorbike operator held to adult standard of care); *Robinson v. Lindsay*, (1978) 20 Wash.App. 207, 579 P.2d 398 (eleven year old snowmobile operator held to adult standard of care).

2. *Mamula v. Ford Motor Co.*, (1971) 150 Ind. App. 179, 275 N.E.2d 849.

## ISSUE 5

Soules next argues error in the ruling of the trial court allowing Soules's witness, Deputy Dohner, to answer a series of questions on cross-examination. The subject matter of the testimony concerned Stewart's skid marks and was related to charts and tables contained in a book entitled "Traffic Accident Investigators Manual". By the use of these charts, it was the apparent purpose of Stewart's attorney to demonstrate that Stewart was not exceeding the forty mile per hour speed limit. Soules's grounds for rejecting this testimony was that Dohner was neither competent or qualified as an expert on the subject.[3]

■ A trial court has considerable latitude in the admission or rejection of evidence and it is only where the error made by the trial judge relates to a material matter or is of such character as to substantially affect the rights of the parties that such an error justifies reversal. *Estate of Ballard v. Ballard, supra.* A trial court has wide latitude in ruling on matters concerning extent of cross-examination of a witness and its discretion will not be interfered with unless abuse is shown. *Posey County v. Chamness,* (1982) Ind.App., 438 N.E.2d 1041.

Deputy Dohner was the first officer at the scene of the accident. As a result, he rendered assistance, made observations of the accident, interviewed or collected names of witnesses and made an accident report. As an initial part of his direct examination, it was determined that he had a bachelor's degree which included some study on law enforcement; a master's degree in law enforcement; was a graduate of the Indiana Law Enforcement Academy which included some studies in traffic enforcement and traffic investigations; and, that he had several years experience in these two areas with the Terre Haute Police Department and the Vigo County Sheriff's Department. At the scene of the accident, he testified that he measured Stewart's skid marks of 61½ feet. On cross-examination, Dohner was questioned as to tables in a "Traffic Accident Investigation Manual". Using the tables, the testimony eventually arrived at the estimated speed of twenty-eight miles per hour.

Two observations are pertinent to this issue. Deputy Dohner, to his credit, stated that this was not an area of his expertise, in that he was only generally familiar with the tables and that it was an area in which an expert witness should testify. Additionally, a reading of the cross-examination indicates that he was not questioned as an accident reconstruction expert, but instead, was used as an expedient vehicle to get the tables before the jury. In other words, the way the matter was handled in this case, any witness who could read and trace lines on a chart could have given the same testimony.

■ Simply because a witness is a police officer does not, standing alone, qualify him to testify as an expert on the speeds of motor vehicles. *Posey County, supra.* Deputy Dohner has excellent qualifications as a police officer, however, by his own statement, the solicited testimony was beyond his area of expertise. An expert witness must possess sufficient skill and knowledge in his or her field to aid the trier of fact in its search for truth. *Underhill v. Deen,* (1982) Ind.App., 442 N.E.2d 1136.

■ Measuring this evidence against the abuse of discretion standard previously set forth, we are of the opinion that allowing the jury to hear the testimony does not cross over into the area of reversible error. Excessive speed, standing alone, was not a prime contention of negligence. The jury heard Dohner say this was beyond his expertise and he was substantially examined upon redirect that he did not know what Stewart's speed was at the time of the collision. It would appear that the testimony was of little probative value in that it has all the appearances of being rank hearsay.

**3.** Soules argues other grounds for error, however, we cannot determine that objections on those grounds were ever made. *See* discussion of Issue 6, *infra.*

## ISSUE 6

■ Soules's next issue asserts error in the admission of the diagram contained in Deputy Dohner's police report. The purported objection to the sketch was:

First of all, Your Honor, he hasn't torn off all of the report. And he has said that the law won't let me use it and it won't let him use it either.

While the quote may be construed as argument in support of an objection, our reading of the record does not reveal anything in the form of a specific objection which requested or required a ruling by the trial judge. *See: D.H. v. J.H.,* (1981) Ind.App., 418 N.E.2d 286.

The objection to the exhibit made substantially later was not timely. *See: Deming Hotel Co. v. Prox,* (1968) 142 Ind.App. 603, 236 N.E.2d 613.

The issue is waived.

## ISSUE 7

Soules argues that the giving of the following instruction was error.

### DEFENDANT'S FINAL INSTRUCTION NO. 2A

There was in force at the time of the accident complained of statutes of the State of Indiana which provided in pertinent part as follows:

I.C. 9–4–1–78(a) No person shall slow down or stop a vehicle, turn a vehicle from a direct course upon a highway or change from one traffic lane to another unless and until such movement can be made with reasonable safety, . . . . or after giving an appropriate stop or turn signal in the manner hereinafter provided in the event any other vehicle may be effected by such movement. (b) A signal of intention to turn right or left shall be given continuously during not less than the last two hundred (200) feet traveled by the vehicle before turning or changing lanes;

I.C. 9–4–1–79(a) Any stop or turn signal when required herein shall be given by means of the hand and arm or by a signal lamp or lamps or mechanical signal device . . .

I.C. 9–4–1–80 All signals herein required given by hand and arm shall be given from the left side of the vehicle in the following manner and such signal shall indicate as follows:

1. Left turn: hand and arm extended horizontally,

2. Right turn: hand and arm extended upward.

3. Stop or decreased speed: Hand and arm extended downward, and

Upon all roadways of sufficient width, a vehicle shall be driven upon the right half of the roadway except as follows:

Upon all roadways any vehicle proceeding at less than the normal speed of traffic at the time and place, under the conditions then existing shall be driven in the righthand lane then available for traffic or as close as practicable to the righthand curb or edge of the roadway, except when overtaking and passing another vehicle proceeding in the same direction or when preparing for a left turn at an intersection or into a private road or driveway.

If you find from a preponderance of the evidence that the plaintiff's ward, Thomas Soules, violated any one or more of these statutes on the occasion in question, and that such violation or violations was without sufficient excuse or justification, such conduct would constitute contributory negligence on the part of the plaintiff's ward, Thomas Soules.

Simply stated, it is Soules's primary argument that these statutes had no application to what he was doing. He cites *B. & O. Railroad Co. v. Brown,* (1972) 154 Ind.App. 660, 290 N.E.2d 742, for the proposition that the trial court is not permitted to instruct a jury regarding duties which arise pursuant to statutes on which there is no supporting evidence.

■ We have previously held that Soules was required to adhere to an adult standard of care and that the statutory rules of the road are applicable under the facts of this case. Soules was operating a

vehicle powered by a motor on or along the edge of a heavily traveled public highway. Soules testified he was going to a store farther down the road and on the other side of the road. His actions, however, indicate either a lane change or turn was occurring when Stewart struck him. Given these facts, we are of the opinion that the statutes contained in the instruction are pertinent to Stewart's theory of the case and that there was evidence to support the instruction as it relates to whether Soules was turning or making a lane change of the sort requiring signaling and/or, because of Soules's less than normal speed, whether he was required to remain on the extreme right of the highway until it was safe to change his direction of travel.

### ISSUE 8

■ Soules's final issue contends that it was error to give Stewart's tendered instruction # 10 which reads:

I instruct you that the area adjacent to the roadway is commonly referred to as the shoulder of the roadway. A person operating a vehicle upon the shoulder of the roadway may not enter upon the roadway without first signaling his intention in compliance with Indiana Statute or ascertaining that such entry may be made with safety and without interference with other vehicles lawfully approaching from the rear.

Soules's objection is that there is no such statute.

Soules testified that at all pertinent times, he was driving along the extreme right edge of the southbound lane. Stewart testified that Soules was on the edge of the southbound lane until Stewart sounded his horn. At that time, according to Stewart, Soules moved to the right and remained off of the paved portion of the road until Soules swerved in front of Stewart.

Stewart counters by citing Ind.Code 9–4–1–14(a) and, (c) which, in substance, defines a street or highway as that width between the right-of-way boundaries and the roadway as that part normally used by vehicular traffic. Additionally, Stewart relies upon

I.C. 9–4–1–78(a), (see Issue 7), which requires a movement be made with reasonable safety after stopping or signaling.

Although the instruction is somewhat less than artful in its wording, we must conclude, under the facts of the case, that there is statutory authority supporting it.

Judgment affirmed.

RATLIFF and NEAL, JJ., concur.